## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| KELVIN LETT, | |
| Plaintiff, | |
| v. | Case No. 18 cv 04993 |
| The CITY OF CHICAGO, ILLINOIS, a municipal corporation; the CIVILIAN OFFICE OF POLICE ACCOUNTABILITY; the INDEPENDENT POLICE REVIEW AUTHORITY; SYDNEY ROBERTS, in her individual capacity; SHARON FAIRLEY, in her individual capacity; ANNETTE MOORE, in her individual capacity; HELEN O'SHAUGHNESSY, in her individual capacity; MARK GRBA, in his individual capacity; AFSCME LOCAL 654; and AFSCME Council 31, | **JURY DEMANDED** |
| Defendants. | |

## COMPLAINT

KELVIN LETT, Plaintiff, by and through his undersigned attorneys, Cass T.

Casper, TALON LAW, LLC, and Christopher Cooper, Law Offices of Christopher

Cooper, Inc., states as follows for his Complaint against Defendants CITY OF

CHICAGO, the CIVILIAN OFFICE OF POLICE ACCOUNTABILITY, the

INDEPENDENT POLICE REVIEW AUTHORITY, SYDNEY ROBERTS, SHARON

FAIRLEY, ANNETTE MOORE, HELEN O'SHAUGHNESSY, MARK GRBA, AFSMCE

LOCAL 654, and AFSCME COUNCIL 31.

## JURISDICTION AND VENUE

1.   Jurisdiction of this Court arises under 42 U.S.C. § 1983, 42 U.S.C. § 1988(a) and

(b), 28 U.S.C. § 1331, 28 U.S.C. § 1343, and the First and Fourteenth Amendments to the

United States Constitution.

2.   This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367,

under the principles of supplemental and pendant jurisdiction, and such claims so

relate to the federal claims as to form a part of the same case and controversy.

3.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants

have their principal places of operation in this District, Plaintiff and, on belief, all

Defendants, reside and are domiciled in this District, and all of the acts/omissions

giving rise to Plaintiff's claims have occurred in this District.

4.   Venue is further proper in this District pursuant to 710 ILCS § 5/17 because the

Arbitrator's Award subject to this dispute was entered pursuant to an agreement

providing that arbitration hearings leading to the award be held in Chicago, Illinois.

## PARTIES

5.   Plaintiff KELVIN LETT ("LETT") is and was at all times relevant to this

Complaint an adult male resident of Cook County, Illinois.  At all times relevant,

Plaintiff has been employed by the City of Chicago as an Investigator II with the former

Independent Police Review Authority, now known as Chicago's Civilian Office of

Police Accountability ("COPA").  Plaintiff was harmed by Defendants in this District.

6.   Defendant CITY OF CHICAGO is a municipal corporation under the laws of the State of Illinois.  It is a party to a collective bargaining agreement with AFSCME Local 654 that includes a grievance and arbitration clause culminating in final and binding arbitration.  It has obligations as an indemnitor of certain conduct of its employees and officers under at least 745 ILCS 10/2-301, *et seq.* and 745 ILCS 10/9-101, *et seq.*  Defendant harmed Plaintiff in Cook County, Illinois.

7.   The CIVILIAN OFFICE OF POLICE ACCOUNTABILITY ("COPA") is an office of municipal government established pursuant to City ordinance 2-78-100, *et seq.*, charged with, *inter alia*, the investigation of alleged police misconduct.  It is a successor organization to the INDEPENDENT POLICE REVIEW AUTHORITY.

8.   The INDEPENDENT POLICE REVIEW AUTHORITY ("IPRA") was an office of municipal government established pursuant to former City ordinance 2-57-010, *et seq.*, charged with, *inter alia*, the investigation of alleged police misconduct.  It was a predecessor organization to the COPA.

9.   Defendant SYDNEY ROBERTS ("ROBERTS") is a legal adult and is Chief Administrator of COPA.  She is a final policymaker and decisionmaker for Defendant CITY'S COPA.  Defendant ROBERTS is sued in her individual capacity.

10. Defendant SHARON FAIRLEY ("FAIRLEY") is a legal adult and former Chief

3

Administrator of IPRA and COPA. At all times relevant, she was a final policymaker and decisionmaker for the CITY'S COPA. Defendant FAIRLEY is sued in her individual capacity.

11. Defendant HELEN O'SHAUGHNESSY ("O'SHAUGHNESSY") is a legal adult and former General Counsel of IPRA. At all times relevant, she was a final policymaker and decisionmaker for the CITY'S IPRA. Defendant O'SHAUGHNESSY is sued in her individual capacity.

12. Defendant ANNETTE MOORE ("MOORE") is a legal adult and former Chief of Staff of IPRA. At all times relevant, she was a final policymaker and decisionmaker for the CITY'S IPRA. Defendant MOORE is sued in her individual capacity.

13. Defendant MARK GRBA ("GRBA") is a legal adult and former Deputy Chief of IPRA. At all times relevant, he was a final policymaker and decisionmaker for the CITY'S IPRA. Defendant GRBA is sued in his individual capacity.

14. At all times relevant, Defendant AFSCME LOCAL 654 ("AFSCME") is and has been a public-sector labor organization within the meaning of the Illinois Public Labor Relations Act, 5 ILCS 315/1, *et seq.*, and the exclusive bargaining representative of, *inter alia*, CITY employees in the job title of Investigator II with COPA.

15. At all times relevant, Defendant AFSCME Council 31 ("AFSCME 31") is and has

been the umbrella organization various local labor organizations, including AFSCME

Local 654.  On belief, it provides resources, representational services, and grievance and

arbitration administration services on behalf of DEFENDANT AFSCME Local 654.

### FACTS RELATING TO ALL COUNTS

16. LETT was hired with the Chicago Police Department's Office of Professional

Standards ("OPS") as an Investigator I in 1997 until his promotion in 1999 to

Investigator II.

17.  When OPS became the IPRA, LETT continued his work as an Investigator II,

including for former Chief Administrator Lori Lightfoot.

18. Under Lightfoot, LETT refused to provide false testimony in a police misconduct

case, and, as a result, earned the chagrin of Lightfoot.

19. In about December 2015, Lightfoot advised IPRA's then-Chief Administrator

Scott Ando that when she was Chief Administrator she "wanted to fire that

motherfucker LETT."

20. Lightfoot advised Scott Ando that he should also terminate Lett.

21. Lori Lightfoot and Defendant FAIRLEY knew each from their work in the United

States Attorney's Office, and, on belief, are believed to be friendly.

22. When Defendant FAIRLEY took over as Chief Administrator of IPRA toward the

end of 2015, when she first met LETT she extended her hand for a handshake, only to

retract it once LETT announced who he was.

5

23. In June 2016, LETT was ordered by FAIRLEY to alter his reports so as to lie about his findings on a particular case regarding an officer-involved shooting of a civilian.

24. Despite LETT's findings, FAIRLEY stated to LETT that he had to have a more "devious mind" to do this job and that he needed to lie about his findings in such a way to reflect that the officer shooting was unjustified.

25. Specifically, FAIRLEY ordered LETT to lie in his reports that a gun was planted on the victim by the officers involved in the shooting, but LETT protested and refused to do so because he had no evidence to support that finding.

26. LETT consistently refused to take the aforesaid action, that is, lying on his investigative report, believing it would violate state and federal law and City policy for him to do so.

27. Within just two weeks of LETT's persistent refusal to lie in his investigative findings at FAIRLEY's orders, FAIRLEY removed LETT from General Investigations. and ordered him transferred to performing janitorial duties.

28. Defendant FAIRLEY also opened an internal investigation into LETT for allegedly disclosing confidential information and assigned Defendants O'SHAUGHNESSY and GRBA to conduct it.

29. For their investigation, O'SHAUGHNESSY and GRBA only conducted a

question and answer statement of a man named Kevin Bowen, which he was not

allowed to view or to sign and based on that and a previous deposition transcript of

Bowen, recommended that LETT be found in violation of IPRA's confidentiality policy.

30. Neither O'SHAUGHNESSY nor GRBA nor FAIRLEY ever interviewed LETT

about what, if any, conversations he might have had with Bowen, nor conducted any

interviews whatsoever with any other potential witnesses.

31. After receiving O'SHAUGHNESSY's and GRBA's report concluding that LETT

had violated IPRA's confidentiality policy, FAIRLEY summarily ordered LETT fired in

February 2017.

32. LETT initiated a grievance over his termination through Defendant AFSCME,

culminating in a grievance arbitration award issued by Arbitrator Matthew Finkin

("Arbitrator Finkin") on July 25, 2017.

33. Arbitrator Finkin found, after a full evidentiary hearing into LETT's termination,

that "because of the way the case was handled there are just too many loose ends" and

"IPRA's failure to conduct a full investigation means that it has not satisfied its burden"

to terminate LETT.

34. Arbitrator Finkin ordered that "[Lett] will be reinstated with back pay and any

benefits lost by virtue of his discharge" and that "[Lett's] record will be expunged of

any reference to this discipline."

35. Neither IPRA nor the CITY ever challenged Arbitrator FINKIN's arbitration

award in Court.

36. Despite the award, DEFENDANTS FAIRLEY and MOORE refused to comply with the award, instead reinstating LETT effective August 2017 and then immediately placing him on administrative leave with pay.

37. LETT thereafter remained on administrative leave with pay at DEFENDANTS FAIRLEY's and MOORE's orders.

38. LETT was eventually assigned on paper to the Chicago Police Department's FOIA Office, but, again, for reasons unknown to him and unexplained to him, he was never actually allowed to return to work.

39. LETT has inquired both of Defendant AFSCME and the CITY on numerous occasions about his actual reinstatement, but to date he remains assigned to the FOIA office on paper, but is not permitted to return to work.

40. Defendant AFSCME has never sought enforcement of Arbitrator Finkin's award in any court of law.

41. Further, Defendant FAIRLEY terminated LETT in retaliation for his refusal to engage in unethical and/or unlawful behavior in conducting his duties as an IPRA Investigator II, and that his termination was entirely pretextual, and based on no legitimate credible evidence.

42. As a separate action entirely from the termination, Defendant FAIRLEY

8

continued to retaliate against LETT for his protected refusals, as well as his utilization of his grievance and arbitration rights, by placing him on administrative leave with pay after Arbitrator Finkin's Award.

43. Defendants MOORE, O'SHAUGHNESSY, and GRBA conspired with FAIRLEY to trump up a termination case against LETT and provide a pretextual basis for his termination.

44. At all times, acting under color of law, Defendants FAIRLEY, MOORE, O'SHAUGHNESSY, and GRBA conspired, and personally and directly, deprived LETT of his rights to engage in protected constitutional activity, including by refusing to engage in unethical/unlawful investigative practices, and for utilizing his contractual rights under a union contract.

45. Defendant ROBERTS has continued to deprive LETT of his position and full pay and benefits as required by the Arbitrator's award, and in further retaliation for LETT's protected activity as outlined herein.

46. LETT has exhausted his administrative remedies under the collective bargaining agreement.

### COUNT 1: 42 U.S.C. § 1983 DEPRIVATION OF FIRST AMENDMENT PROTECTED RIGHT TO FREEDOM OF SPEECH
**(Plaintiff v. All individual Defendants)**

47. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this complaint.

48. LETT refused to alter his investigative report to include a finding that a gun was planted by officers on the victim of a police shooting because he had no evidence whatsoever to support this conclusion.

49. LETT's refusal was on a matter of grave public concern, *to wit*, speech about the results of official police investigations into fatal police-action shootings and allegations of police misconduct, issues of general interest, legitimate news interest, and of value and concern to the public at the time of LETT's refusal and the present.

50. LETT was not required – in fact, he was prohibited – by law, and IPRA and City policy to lie on his investigative reports or to alter or falsify evidence to support different conclusions. Such activity in no way was a part of LETT's employment duties.

51. Because LETT's report constituted official evidence, he had a legal obligation to include truthful information and only truthful information based on his investigation.

52. LETT had a strong First Amendment protected interest in refusing to make an investigative report that was dishonest and contained lies, as FAIRLEY wanted him to do.

53. Defendants FAIRLEY, MOORE, O'SHAUGNESSY, and GRBA acting under color of law, terminated on February 17, 2017 LETT in retaliation for his refusals to follow her orders to retract his report to include lies and to speak falsely about LETT's findings.

54. Defendant FAIRLEY, FAIRLEY, MOORE, O'SHAUGNESSY, and GRBA by their

actions under color of law, deprived LETT of his First Amendment protected right to free speech.

55. Defendant ROBERTS has refused and/or failed to intervene to prevent the effects of unlawful retaliation against LETT.

56. As a direct and proximate result of Defendants' actions under color of law, LETT suffered damages, including loss of pay, benefits, compensatory damages, special and consequential damages, and emotional distress.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants, and order the following affirmative and other relief: (1) rescind the Plaintiff's termination and return him to his prior position or a substantially similar position with full back pay, benefits, pension service credits and contributions, and other make whole relief with pre-judgment interest; (2) pay damages to Plaintiff for actual, general, special, compensatory damages, including emotional distress and reputational damage in an amount to be proved at trial; (3) pay the costs of litigating this action and reasonable attorneys' fees; (4) pay punitive damages; (5) order Defendants to cease and desist from retaliating against Plaintiff in contravention of his federal constitutional rights; and, (6) order such other relief as this Court deems just and proper.

## <u>COUNT 2: 42 U.S.C. § 1983 DEPRIVATION OF PROTECTED PROPERTY INTEREST WITHOUT DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION</u>
### (Plaintiff v. All individual Defendants)

57. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this complaint.

58. Plaintiff has an actual protected property interest under the Fourteenth Amendment pursuant to his collective bargaining agreement, his "for cause" employment status, and by a clearly implied promise of continued employment.

59. Plaintiff has an actual property interest under his collective bargaining agreement because same provides that covered employees may be terminated only for just cause.

60. Plaintiff also has an actual protected property interest by CITY ordinance because same provides that covered employees may be terminated only for just cause.

61. Plaintiff also has an actual protected property interest by implied promise of continued employment after he completed his probationary period with the CITY, and because he was subject to a progressive disciplinary system.

62. Following Arbitrator Finkin's July 25, 2017 award, the CITY reinstated Plaintiff.

63. Defendants FAIRLEY, MOORE, O'SHAUGHNESSY, and GRBA, acting under color of law and in concert, immediately deprived Plaintiff of his position and entitled level of pay by placing him on administrative leave following the arbitrator's favorable ruling.

12

64. Defendants FAIRLEY, MOORE, O'SHAUGHNESSY, and GRBA, acting under color of law and in concert, did not provide Plaintiff a *Loudermill* or other pre-deprivation hearing before placing him on administrative leave, even though such status led to a decrease in pay and benefits available to Plaintiff in the amount of $9,000 per year plus losses in benefits.

65. Through their actions under the color of law, Defendants FAIRLEY, MOORE, O'SHAUGHNESSY, and GRBA deprived Plaintiff of a protected property interest in continued compensation without any due process whatsoever as required by the Fourteenth Amendment of the United States Constitution.

66. Defendants FAIRLEY, MOORE, O'SHAUGHNESSY, and GRBA took the aforesaid actions in retaliation for Plaintiff exercising his lawful rights.

67. Defendant ROBERTS has failed and/or refused to intervene to prevent the ongoing deprivation of Plaintiff's protected property interest.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants, and order the following affirmative and other relief: (1) rescind the Plaintiff's termination and return him to his prior position or a substantially similar position with full back pay, benefits, pension service credits and contributions, and other make whole relief with pre-judgment interest; (2) pay damages to Plaintiff for actual, general, special, compensatory damages, including emotional distress and reputational damage in an amount to be proved at trial; (3) pay the costs of litigating

this action and reasonable attorneys' fees; (4) pay punitive damages; (5) order

Defendants to cease and desist from retaliating against Plaintiff in contravention of his

federal constitutional rights; and, (6) order such other relief as this Court deems just and

proper.

### COUNT 3: 42 U.S.C. § 1983 DEPRIVATION OF FIRST AMENDMENT PROTECTED RIGHT TO FREELY ASSOCIATE
**(Plaintiff v. All individual Defendants)**

68. Plaintiff incorporates by reference and restates herein by express reference all

other paragraphs of this complaint.

69. Plaintiff, jointly and in concert with AFSCME, sought to freely exercise his First

Amendment right to associate freely by filing a grievance over his termination under

the union contract, acting in concert with his union and fellow employees to process his

grievance through to arbitration, by availing himself, through his union, of his right to

arbitrate his termination grievance under the collectively-bargained contract providing

for just cause termination only, and by prevailing in arbitration such that his

termination was found to lack just and sufficient cause.

70. Defendants FAIRLEY, MOORE, O'SHAUGHNESSY, and GRBA, acting under

color of law and in concert, deprived Plaintiff of his right to freely associate by utilizing

the collective-bargained grievance and arbitration procedure by summarily placing him

on administrative leave directly following the issuance of the arbitration award.

71. Defendants FAIRLEY, MOORE, O'SHAUGHNESSY, and GRBA, acting under

14

color of law and in concert, deprived Plaintiff of his First Amendment guaranteed right to freely associate by keeping Plaintiff on administrative leave directly following the issuance of the arbitration award without legitimate explanation, without cause or justification, and in direct retaliation for Plaintiff exercising his rights to grieve and arbitrate his termination under the collective bargaining agreement.

72. By their actions and conduct under color of law, Defendants FAIRLEY, MOORE, O'SHAUGHNESSY, and GRBA sent the message to employees under her span of control within IPRA that any effort to challenge her decisions would be met with retaliation such as the placement of Plaintiff on administrative leave directly following his prevailing arbitration award.

73. By their actions and conduct under color of law, Defendants FAIRLEY, MOORE, O'SHAUGHNESSY, and GRBA deprived Plaintiff of rights, privileges, and immunities guaranteed by the First Amendment of the United States Constitution, including the right to freely associate such as by utilizing the collectively-bargained for grievance and arbitration procedure of Plaintiff's union contract.

74. Defendant ROBERTS has failed and/or refused to intervene to prevent the ongoing deprivation of Plaintiff's protected property interest.

75. Plaintiff's utilization of the grievance and arbitration procedure involved a matter of public concern because one of the bases for Plaintiff's challenge was that the Chief Administrator of IPRA – the oversight agency charged with investigating police

15

misconduct complaints – failed to properly oversee an investigation into Plaintiff in which Plaintiff was not even interviewed as part of the investigation and he was just summarily fired.

76. Plaintiff's grievance was inherently critical of IPRA management given that the whole agency was charged and expected to oversee police misconduct investigations, yet the agency could not even investigate one of its own employees to the level of a reasonably competent police investigation.

77. Plaintiff has suffered severe and ongoing damages as a result of Defendants' actions, including his wrongful termination and retaliatory placement of him on administrative leave, including but not limited to lost wages, benefits, pension service credits and contributions, lost or to-be-lost insurance coverage, and anxiety and emotional distress and humiliation.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants, and order the following affirmative and other relief: (1) rescind the Plaintiff's termination and return him to his prior position or a substantially similar position with full back pay, benefits, pension service credits and contributions, and other make whole relief with pre-judgment interest; (2) pay damages to Plaintiff for actual, general, special, compensatory damages, including emotional distress and reputational damage in an amount to be proved at trial; (3) pay the costs of litigating this action and reasonable attorneys' fees; (4) pay punitive damages; (5) order

16

Defendants to cease and desist from retaliating against Plaintiff in contravention of his federal constitutional rights; and, (6) order such other relief as this Court deems just and proper.

### COUNT 4: ILLINOIS STATE LAW WHISTLEBLOWER ACT VIOLATION
### (Plaintiff v. City, COPA, IPRA, Roberts, Fairley, and Moore)

78. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this complaint.

79. LETT refused to participate in activity that would result in a violation of a State or federal law, rule, or regulation, by refusing Defendant FAIRLEY's demand that LETT alter his findings to support a different outcome in an investigation.

80. LETT has a protected right under state law to be free from retaliation from engaging in protected refusals as outlined herein.

81. FAIRLEY and MOORE engaged in the following separate and distinct retaliatory adverse actions against LETT:

   a. Removing his Investigator II duties;

   b. Transferring him to perform janitorial work;

   c. Ordering an internal investigation into LETT;

   d. Ordering LETT's termination in February 2017;

   e. Placing LETT on Administrative Leave in August 2017, immediately after LETT prevailed in an arbitration over his termination;

     f.   Refusing to permit LETT to perform his Investigator II duties after the favorable arbitration award;

     g.   Causing LETT to suffer a pay and benefits cut as a result of her refusal to reinstate him per the Arbitrator's Award.

82. Defendants FAIRLEY and MOORE engaged in the aforesaid adverse actions intending to retaliate against LETT for his protected refusals.

83. Defendant ROBERTS has continued to refuse to reinstate LETT per the Arbitrator's order.

84. As a direct and proximate cause of LETT's protected refusals, Defendants ROBERTS, FAIRLEY, and MOORE have caused LETT actual damages including lost pay and benefits, compensatory losses, emotional distress, and reputational harm.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and order (1) reinstatement with the same seniority status that he would have had but for the violation; (2) back pay and back benefits with interest; and, (3) compensation for damages in an amount to be determine at trial as a result of the violation, including litigation costs, expert witness fees, and reasonable attorneys' fees.

## COUNT 5: ILLINOIS STATE LAW ACTION FOR CONFIRMATION AND ENFORCEMENT OF AN ARBITRATION AWARD
### (Plaintiff v. City, COPA, IPRA, AFSCME Local 654, and AFSCME Council 31)

85. Plaintiff incorporates by reference and restates herein by express reference all

other paragraphs of this complaint.

86. Defendants CITY, COPA, IPRA and AFSCME at all times relevant were parties to a valid and enforceable collective bargaining agreement covering all of IPRA's and COPA's employees in the job title of, *inter alia*, Investigator II with IPRA and COPA.

87. COPA is a successor organization to IPRA under the Illinois Public Labor Relations Act, 5 ILCS 315/1, *et seq.*, assuming contractual obligations of its predecessor IPRA.

88. Defendant AFSCME Local 654 is a purely public-sector union subject to the Illinois Public Labor Relations Act, 5 ILCS 315/1, *et seq.*

89. Defendant AFSCME Council 31 provides contract administration services for AFSMCE Local 654, and helped process and arbitrate LETT's termination grievance in this case.

90. The collective bargaining agreement between Defendants CITY and AFSCME Local 654 contains a grievance procedure culminating in final and binding arbitration.

91. In 2017, Defendants CITY, IPRA, and both AFSCME Defendants agreed to submit Lett's termination grievance to arbitration under the collective bargaining agreement, and selected Arbitrator Finkin to hear and decide the grievance.

92. On July 25, 2017, Arbitrator Finkin issued an award finding that Lett's termination lack just and sufficient cause, and reversing and overturning

Lett's termination in its entirety, ordering, "[Lett] will be reinstated with back pay and any benefits lost by virtue of his discharge" and that "[Lett's] record will be expunged of any reference to this discipline." A true and correct copy of the Award is attached.

93. In particular, Arbitrator Finkin found that IPRA's failure to fully investigate the allegations against Lett – including failing to even interview him about the allegations against him – and, instead, relying on a years-old deposition transcript from a witness with a shoddy memory, amounted to a failure to conduct a full investigation.

94. LETT's termination grievance alleged a meritorious violation of the Collective Bargaining Agreement by the CITY and IPRA, and the Arbitrator agreed.

95. Despite Arbitrator Finkin's award, LETT was not reinstated with IPRA to his prior position, but reinstated and immediately placed on administrative leave.

96. Instead, Defendant FAIRLEY, placed LETT on Administrative Leave With Pay after Arbitrator Finkin issued his award on July 25, 2017.

97. Defendants FAIRLEY and the CITY refused and failed to comply with the Arbitrator's order reinstating LETT.

98. Neither AFSCME Defendant has sought confirmation and/or enforcement of the arbitrator's award despite Plaintiff's diligent inquiries and attempts to have them seek such enforcement and his reinstatement either through the Arbitrator or legal action.

99. While Plaintiff currently is holding an administrative position within the City of

20

Chicago's Police Department as an employee of the FOIA Office, for reasons unknown to him, he is not permitted to return to work.

100.     Plaintiff is losing approximately $9,000 per year and benefits as a result of Defendants FAIRLEY's and the CITY'S refusal to reinstate him as the Arbitrator ordered.

101.     Plaintiff is also suffering extreme embarrassment, humiliation, anguish, stigma, and stigma plus and a change in his legal status at least in that he is not allowed to actually work despite having his termination found to be lacking in just cause and is not earning full salary without justification.

102.     Illinois' Uniform Arbitration Act, "[u]pon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award. . ." 710 ILCS 5/11.

103.     Defendant CITY has never challenged the Arbitrator's Award within the time limits allowed by law, and more than 90 days have elapsed since issuance of the Award.

104.     Plaintiff, an employee covered by a collective bargaining agreement and as the employee subject of Arbitrator Finkin's award, has a private right of action to confirm and enforce an arbitration award regarding his termination grievance because:

   a.   he is a member of the class for whose benefit Illinois' Uniform Arbitration
        Act was enacted, is a member of the class for whose benefit Illinois' Public

Labor Relations Act was enacted, and is a member of the class of persons for whom the grievance and arbitration clause in this case was intended to benefit;

b.   the Plaintiff's injury, non-enforcement and non-compliance with an arbitration award in his favor, is one the Uniform Arbitration Act, the Illinois Public Labor Relations Act, and the collective bargaining agreement was designed to prevent;

c.   the plaintiff proceeding on his own to enforce his own arbitration award is consistent with the purposes of the Illinois' Uniform Arbitration Act, the Illinois Public Labor Relations Act, and the collective bargaining agreement; and,

d.   Plaintiff has no means of enforcing his own arbitration award unless he brings this action, given that AFSCME has not brought an action to confirm and enforce the Award.

105.    Defendant AFSCME Local 654 and AFSCME Council 31 breached the duty of fair representation by intentionally failing and/or refusing to seek enforcement/confirmation of the arbitration award and failing to give any explanation to LETT for so doing, including after LETT had notified the Union that the Defendants CITY and FAIRLEY were not complying with Arbitrator Finkin's Award.

106.    AFSCME's breach of its duty of fair representation necessitates LETT's

22

bringing this action on his own behalf, regardless of his private right to confirm and enforce an arbitration award overturning his own termination notwithstanding.

107.     Because of his private right to do so and because of the Union's breach of its duty of fair representation, Plaintiff is entitled to confirmation of the arbitration award and judgment entered thereon pursuant to 710 ILCS 5/14 ("Upon the granting of an order confirming. . .an award judgment shall be entered in conformity therewith and be enforced as any other judgment.").

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court confirm Arbitrator Finkin's July 25, 2017 Award and enter judgment thereon.  Plaintiff further requests that this Court order DEFENDANTS to comply with the Arbitrator's Award in all respects, including by reinstating Plaintiff as Investigator II or to a substantially-similar position within COPA, and by paying Plaintiff all of the back pay and benefits to which he is entitled under the Award with pre- and post-judgment interest.

## COUNT 6: INDEMNIFICATION OF DEFENDANTS PURSUANT TO 745 ILCS 10/2-301, *et seq.*, AND 10/9-102

108.     Plaintiff realleges and incorporates by reference all other paragraphs of this complaint above as if fully set forth in this Count.

109.     Illinois statute provides that a local public entity such as the City of Chicago is obligated to assume financial responsibility for the actions committed by its officials or employees, such as the CITY and all of the individual Defendants named

herein, and to pay judgments against such individuals. *See, e.g,*, 745 ILCS §§ 10/2-301, 2-302, 9-102.

WHEREFORE, Plaintiff requests that this court enter a judgment in favor of Plaintiff and against all Defendants, and order that Defendant CITY assume financial responsibility for the actions and/or omissions committed by the Defendants and make Plaintiff whole in all ways with pre- and post-judgment interest.

## COMMON PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor, and against Defendants, for:

1. Compensatory damages;

2. Punitive damages;

3. Confirmation and judgment on Arbitrator Finkin's July 25, 2017 arbitration award;

4. Reasonable attorneys' fees and litigation costs and expenses;

5. Appropriate equitable relief; and

6. Such other relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,

*/s Cass T. Casper*

_____

*Cass T. Casper, Esq.*

24

One of Plaintiff's Attorneys

*Cass T. Casper, Esq.*
IL Attorney Registration Number 6303022
TALON LAW, LLC
1153 West Lunt Avenue, Suite 253
Chicago, Illinois 60626
P: (312) 351-2478 F: (312) 276-4930 E: ctc@talonlaw.com

*Christopher Cooper, Esq.*
IL Attorney Registration Number  6307550
Law Offices of Christopher Cooper, Inc.
79 West Monroe Street, Suite 1213
Chicago, Illinois 60603
P: (312) 473-2968 F: (866) 334-7458 E: cooperlaw3234@gmail.com