IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| KELVIN LETT, | |
| Plaintiff, | Case No. 18-cv-04993 |
| v. | The Honorable Judge John Robert Blakey |
| CITY OF CHICAGO, *et al.*, | Magistrate Judge Jeffrey Cole |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT FAIRLEY'S MOTION TO DISMISS**

Plaintiff takes the high road to Defendant Fairley's overheated rhetoric in her Motion to Dismiss ("Motion"), and now addresses her arguments as to why the Second Amended Complaint ("SAC") should be dismissed. Her Motion should be denied.

**I.      Lett Has Stated Constitutional Claims Against Fairley.**

a.      Lett Has Stated A First Amendment Retaliation Claim In Count I.

[T]he First Amendment protection of a public employee's speech depends on a careful balance 'between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Lane v. Franks*, 134 S.Ct. 2369, 2374 (2014) (quoting *Pickering v. Bd. of Ed. Of Twnshp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)). "Government employers, like private employers, need a significant degree of control over their employees' words and actions in order that employees 'not contravene governmental policies or impair the performance of governmental functions. . ." *Garcetti v. Ceballos*, 547 U.S. 410, 418-19 (2006). However, although public employees must accept certain limitations on their freedom when entering public service, they "do not check all of their First Amendment rights at

the door." *Lewis v. Cohen*, 165 F.3d 154, 158 (2d Cir. 1999). "A citizen who works for the government is nonetheless a citizen," and the "First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities a private citizens." *Perry v. Sinderman*, 408 U.S. 593, 597 (1972). "There is certainly some difference between compelled speech and compelled silence, but in the context of protected speech, the difference is without constitutional significance, for the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what not to say." *Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 796-97 (1988). In the public employment context, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are *necessary for their employers to operate efficiently and effectively*." *Connick v. Myers*, 461 U.S. 138, 147 (1983) (emphasis added).

In her Motion, Fairley principally relies on *Davis v. City of Chicago*, 889 F.3d 842, 845 (7th Cir. 2018) as standing for the proposition that the Seventh Circuit held that Davis' refusal to change his reports was an action that fit squarely within his duties as a public employee, not as a private citizen. *Motion*, p. 5. The problem with Fairley's citation to *Davis* is that it ignores that the case was about differing *evaluations* of facts, ignores Judge Hamilton's concurring opinion, and ignores that the SAC alleges that Lett was ordered to make *falsehoods* in his reports, not just different evaluations of facts, which in no way qualifies as speech necessary for Lett's employer to operate efficiently and effectively.

*Davis* concerned an IPRA investigator who alleged that he was ordered to "change 'sustained' findings of police misconduct." *Id.*, 889 F.3d at 842. The Seventh Circuit affirmed the dismissal of Davis' First Amendment retaliation claim on the ground that Davis' speech was

made pursuant to his official duties, and not as a citizen. *Id.* at 845. What is important, however, is that Davis alleged that he was required to change the reports to "accept his boss's different *evaluations* of facts." *Id.* at 846 (J. Hamilton concurring) (original emphasis). Judge Hamilton recognized that such was an important distinction from a case where an officer is fired for refusing to make *false statements of fact*. *Id.* (citing *Jackler v. Byrne*, 658 F.3d 225, 230-31 (2d Cir. 2011)). Nothing in *Davis* indicates that he was asked to falsify facts in his reports, which is what the SAC alleges in this case.

Fairley accuses Lett of "pleading around" *Davis*, although Lett pleads that "FAIRLEY ordered LETT to lie in his reports that a gun was planted on the victim by the officers involved in the shooting, but LETT protested and refused to do so because he had no evidence to support that finding." *SAC*, ¶34; *see also SAC*, ¶¶35-40. Lett has plead a First Amendment cause of action under *Davis*, in particular under the majority's reasoning and Judge Hamilton's concurring opinion. The cases cited by Judge Hamilton also support Lett's claim. In *Jackler*, the Second Circuit explained that a police department's discretion as an employer "does not include authority to coerce or intimidate its employees to engage in criminal conduct or intimidate its employees to engage in criminal conduct by filing reports that are false in order to conceal wrongdoing by another employee or to conceal eyewitness corroboration of civilian complaints of such wrongdoing." *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011). The *Jackler* court reversed dismissal of a First Amendment claim by a police officer on exactly the basis that *Garcetti* and its progeny "do not preclude First Amendment protection for a [government employee's] refusals to make false statements." *Id.* at 229-31. The *Jackler* plaintiff refused to report falsely about a matter of serious public concern, and such a refusal, he alleged, involved his First Amendment right as a private citizen to decline defendants' invitation to falsify his

official report. *Id.* at 232. The reluctant reasoning of the district court highlights the irony in Fairley's position here:

"Jackler's refusal to alter his report was done in his capacity as a police officer, and that refusal only occurred because he was an officer. Ironically, it is because he was a public employee with a duty to tell the truth that his insistence on fulfilling that duty is unprotected."

*Id.* at 233. The point Fairley intends to make is that Lett was acting as a government employee in his refusals, and, therefore, in no way can state a First Amendment claim. *Motion*, p. 5-6. But "activities required of the employee as part of his employment duties are not performed as a citizen if they are not the kind of activity engaged in by citizens who do not work for the government." *Garcetti*, 547 U.S. 410, 423 (internal quotations omitted). "The matter of whether the government employee's duties do or do not have a civilian analogue is a question of law." *Weintraub v. Bd. of Educ.*, 595 F.3d 196 (2d Cir. 2010). *Jackler*, 658 F.3d 225 at 242. The *Jackler* court found that "[i]n the context of the demands that Jackler retract his truthful statements and make statements that were false, we conclude that his refusals to accede to those demands constituted speech activity. . ." *Id.* at 241. This case is on all fours because Lett alleges that (1) Fairley ordered him to alter his reports so as to include a false statement that a gun was planted on a victim of an officer-involved shooting (*SAC*, ¶¶32 – 34); and, (2) Lett refused to alter his reports to include false statements of fact (*SAC*, ¶¶36, 42). Accordingly, Lett alleges protected speech activity under the First Amendment that has a civilian speech analogue and that was on a matter of public concern.

Fairley might respond that *Jackler* is a Second Circuit case. But, as noted in *Davis*, the Seventh Circuit held pre-*Garcetti* that the First Amendment protects police investigators in exposing a police cover-up to the public where the officer was ordered to rewrite reports to prevent such disclosure. *Davis*, 889 F.3d 842, 845-46 (J. Hamilton concurring) (citing *Gonzalez*

4

*v. City of Chicago*, 239 F.3d 939, 941 (7th Cir. 2001)). *Davis* itself, as noted, involved a disagreement about the *evaluation* of facts, not allegations that Davis was asked to lie in his reports, as is alleged by Lett here. Such a disagreement did raise the concerns present in *Jackler* discussed above, and does not avoid the reasoning in *Lane v. Franks* that "[w]hen the person testifying is a public employee, he may bear separate obligations to his employer. . .[b]ut any such obligations as an employee are distinct and independent from the obligation, as a citizen, to speak the truth. That independent obligation renders sworn testimony speech as a citizen and sets it apart from speech made purely in the capacity of an employee." *Lane*, 134 S.Ct. 2369 at 2379. *Lane* held that the "critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* In this case, there is nothing plead in the Complaint that states it was part of Lett's ordinary job responsibilities to refuse to place falsehoods in his investigative reports; indeed, the SAC alleges that Fairley asked Lett to place false statements in reports, he refused to, and Fairley subjected him to a bevy of adverse actions including termination and then placement on administrative leave when he prevailed at the arbitration. *SAC*, ¶¶32-62 (refusals), 41-43 (adverse actions), 54 (termination), 60 (administrative leave). There is nothing "ordinarily within the scope" of Lett's "job responsibilities" about the extraordinary circumstances of his refusing to place false statements in his reports at Fairley's behest. So too, Lett has no evident "personal interest" in refusing to lie in the reports that would minimize his conduct into mere speech over a personal grievance over employment conditions; indeed, the lack of any divinable personal interest in Lett's refusals are another reason they constitute speech as a private citizen.

Adopting a rule in this district that holds that Lett does not have First Amendment protection from retaliation for refusing to lie about facts in a police investigation would put

police investigators in an analogous position to *Lane* by placing them "in an impossible position, torn between the obligation to testify truthfully and the desire to avoid retaliation and keep their jobs." *Id.* If Lett cannot state a First Amendment retaliation claim, as Fairley urges, Investigators will be in that "impossible position" when faced with requests to place falsehoods in their reports as alleged in the SAC. Accordingly, *Davis*, particularly the concurring opinion of Judge Hamilton, *Lane*, and *Jackler*, all support Lett's First Amendment retaliation claim in this case.

Fairley also claims that the SAC should be dismissed because Lett has relied on mere legal conclusions about conspiracy and "private citizen" in support of his First Amendment retaliation claim in Count I. *Motion*, p. 5-6. Not so. *See SAC, e.g.*, ¶¶48-55 (detailing conspiracy agreements between the individual Defendants and acts in furtherance); ¶46 ("Lett had rights as a private citizen, as a City employee, and as law enforcement to refuse to falsify evidence. . ."); ¶45 ("providing false information in his investigative reports was not a part of LETT's ordinary job responsibilities."); ¶36 ("Lett consistently refused to take the aforesaid action, that is, lying on his investigative report, believing it would violate state and federal law. . .and City policy for him to do so."); ¶78 ("Lett had a strong First Amendment protected interest in refusing to make an investigative report that was dishonest and contained lies, as FAIRLEY wanted him to do."). Lett incorporates by reference his responses to the other individual Defendants' Motions as further reasons to deny Fairley's Motion.

b. <u>Lett Has Stated A *Monell* Claim Against Fairley As The Agency Head.</u>

Because this case presents a unique issue of whether IPRA, COPA, and Fairley as the agency head, are independently suable entities, they are all named in the *Monell* count. Plaintiff

will concede that if such entities are found not to be suable independently from the City, then the *Monell* claim against Fairley as agency head should be dismissed as to her.

c. <u>Lett States A Deprivation Of Property Without Due Process Claim In Count III.</u>

Fairley claims that Lett has no protected property interest alleged in the SAC, that, if he did, he received all process that was due or did not avail himself of administrative remedies, and that he has not alleged Fairley was involved in any deprivation involving his current circumstances. *Motion*, p. 8. Contrary to Fairley's claim, though, the SAC *does* allege that she had personal involvement in deprivation of his current employment status. *SAC,* ¶¶102-105 (all stating that Fairley placed him on ALWP, did not provide him process before so doing, caused his decrease in pay and loss of active work status, and caused the 14th Amendment deprivation). As to her other arguments, Lett adopts his positions in his response to the other individual Defendants and submits Fairley's Motion should be denied, as well as for the following additional reasons.

In the employment context, "a property interest can be created in one of two ways: (a) by an independent source such as state law securing certain benefits or (b) a clearly implied promise of continued employment. *Adams v. Bd. of Educ. Harvey Sch. Dist. 152*, Case No. 15-cv-8144, ¶10 (N.D. Ill. 2018). Lett does allege a property interest in his position as Investigator, and that he was deprived of that interest and level of pay at that position. *SAC*, ¶102 ("FAIRLEY. . .immediately deprived Plaintiff of his position and entitled level of pay by placing him on administrative leave following the arbitrator's ruling."). The *SAC* cites sources of that protected property interest: the CBA (¶98), City ordinance (¶99), and implied promise of continued employment when he completed his probationary period and because he was subject to progressive discipline (¶100). *See, e.g., Misek v. Chicago*, 783 F.2d 98 (7th Cir. 1986) (for cause

provision of Illinois Municipal Code and Chicago Municipal Ordinance established a property interest); *Auriemma v. City of Chicago*, 601 F.Supp. 1080 (N.D. Ill. 1984) (custom established that members of CPD have a protected property interest in their jobs). The arbitration award established that Lett has a protected property interest as Investigator, as do the City's Personnel Rules. *SAC*, Ex. 1, p.3. The arbitration award also established that Lett was to be *reinstated* as *Investigator*, not placed on administrative leave, not transferred, not removed, but *reinstated*. *SAC*, Ex. 1, p.22. The Award itself created a protected property interest in this case. But the SAC alleges that "reinstatement" was done on an illusory basis, because Fairley turned around and immediately removed Lett from his position again. *SAC*, ¶102. Even "[a] paid suspension can give rise to a procedural due process claim if the suspension imposes a 'substantial indirect economic effect' on the employee." *Battle v. Alderden*, Case No. 14-cv-1785 (N.D. Ill. 2015) (citing *Palka v. Shelton*, 623 F.3d 447, 452-53 (7th Cir. 2010)). The SAC alleges loss of pay resulting from Fairley's adverse actions, which is enough to trigger due process. *SAC*, ¶¶102-103. To the extent that Defendant alleges facts outside the SAC about other administrative remedies, that is a matter for discovery, not a Rule 12(b)(6).

d. <u>Lett Sufficiently States A First Amendment Retaliation Claim In Count IV.</u>

Fairley claims Count IV states no First Amendment claim because free association only applies to matters of public concern, not personal grievances, and the paid leave is materially insufficient. *Motion*, p.9. This district does not necessarily follow the public concern test in the context of association claims. *See Berry v. Ill. Dep't of Human Servs.*, No. 00 cv-5538 at *12 (N.D. Ill. Oct. 29, 2003). Importantly, Lett's grievance does involve a matter of contemporary public concern, police discipline and termination, which is shown by the Press Release about COPA attached to the individual Defendants' Motions.

      e.        <u>Fairley Is Not Entitled To Qualified Immunity.</u>

Fairley argues that she is entitled to qualified immunity because Lett has not alleged a "clearly established" right against Fairley, citing the *Davis* case. *Motion*, p. 10. But as noted, *Davis* involved a disagreement between an employee and his supervisor about *evaluations* of facts in a report and whether they should lead to a different outcome for the police officer under investigation. This case is in line with Judge Hamilton's concurring opinion and the cases therein, discussed above, that refusing to lie or alter the facts in report is conduct that would be entitled to First Amendment protection. Fairley's apparent argument that she was uncertain whether or not refusing to lie in an investigative report was wrong is spurious. Even supposing she replies that there is a distinction between knowing something is wrong and knowing something is constitutionally-protected, her claim is dubious in light of *Spalding v. City of Chicago*, 24 F. Supp. 3d 765, 781 (N.D. Ill. 2014) where this district rejected qualified immunity for a First Amendment retaliation claim. *Spalding* reasoned that it was clearly-established that the First Amendment prohibited transfers of public employees to less desirable positions because of their involvement in uncovering government misconduct. *Id.* (citing *Spiegla v. Hull*, 371 F.3d 928, 936 (7th Cir. 2004) and *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 648 (7th Cir. 2013)). The foregoing cases make clear that adverse actions such as investigating, suspending, and terminating employees engaged in uncovering corruption are not entitled to qualified immunity.

*Kristofek v. Village of Orland Hills*, 832 F.3d 785, 798 (7th Cir. 2016) also made clear that "'general statements of the law are not inherently incapable of giving fair and clear warning, and in [certain] instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question.'" *Kristofek*, 832 F.3d, 785 at 798 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *see also Lynch v. Ackley*, 811 F.3d 569,

9

578-79 (2d Cir. 2016) ("'clearly established law' is satisfied if the law on subject was defined at the time with reasonable clarity *or clearly foreshadowed* in rulings of the Supreme Court or the Second Circuit. . ." (emphasis added)). In this case, *Lane v. Franks* clearly established that the First Amendment protects public employees providing truthful testimony, compelled by subpoena, outside the course of ordinary job responsibilities. 134 S. Ct. 2369, 2374-75 (2014). *Spalding*, *Spiegla*, and *Hobgood* all establish in this district that the First Amendment protects against retaliation of public employees who report wrongdoing or corruption to colleagues, their superiors, or to law enforcement. *Kristofek*, 832 F.3d 795 at 798-799. So too, this Circuit recognizes that "[t]erminating a government employee for speaking out against corruption in her workplace is surely contrary to clearly mandated public policy (the intersection of the First Amendment and the public's right not to be defrauded by its government)…"). *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 678 (7th Cir. 2009). With this legal backdrop, Fairley is not entitled to claim qualified immunity from Lett's constitutional claims.

## II. Lett Has Stated An IWA Claim Against Fairley.

Fairley states the IWA should be dismissed because (1) Lett has not alleged a Section 20 IWA claim because "altering a finding on an IPRA report is not illegal"; (2) the IWA only provides a cause of action against a plaintiff's employer, not the employer's individual agents; (3) the one-year SOL applies to Lett's claims as to his termination; (4) the other adverse actions are materially insufficient; and, (5) Lett has not plead a causal nexus between his protected refusals and his placement on administrative leave. (*Motion*, p. 12). Fairley piggybacks off the City's Motions, and, to the extent she does, Lett adopts his arguments in his Responses to same. The Court should deny the Motion as to the IWA claim against Fairley.

First, Fairley asserts that altering a finding on an IPRA report is not illegal, which is an astonishing position to take, but also ignores the context of the SAC, which alleges circumstances that Fairley asked Lett to put falsehoods into his reports, including that "FAIRLEY ordered LETT to lie in his reports that a gun was planted on the victim by the officers involved in the shooting, but LETT protested and refused to do so because he had no evidence to support that finding." *SAC*, ¶34. Indeed, Chicago Police Department Officers are being prosecuted as this Response is written for official misconduct for, *inter alia*, falsifying reports in the Van Dyke case.[1] In this case, Lett refused to put false information in his reports, and putting same would have been at least obstruction of justice and/or official misconduct.

Second, at least four Judges in this district interpret the IWA as providing for individual liability, with Judge Harry Leinenweber ruling so as recently as October 24, 2018. In *Bello v. Village of Skokie*, 151 F. Supp. 3d 849, 865 (N.D. Ill. 2015) ("*Bello*"), Judge Kennelly held that:

"The IWA includes in its definition of employer 'any person acting ... on behalf of [an entity] in dealing with its employees.' 740 ILCS 174/5. In this way, the statute makes it clear that individuals acting on behalf of an entity that one might colloquially understand to be a person's `employer' may likewise be considered `employers' potentially liable for violating the statute."

*Bello*, 151 F.Supp.3d at 865. (internal quotations omitted). In *Logan v. City of Chicago*, Judge Leinenweber followed Judge Kennelly's reasoning, as well as that of Judge Lee in *Van Pelt v. Bona-Dent, Inc.*, Case No. 17-cv-1128, *9 (N.D. Ill. May 16, 2018), in finding that individuals may be liable under the IWA. *See Logan v. City of Chicago*, Case No. 17-cv-8312, *14-15 (October 24, 2018). Judge Leinenweber agreed with Judge Lee that "[t]he unambiguous and plain language of the IWA includes [the individual Defendant] because he is alleged to have been acting on behalf of the corporation and within the scope of his authority. . ." *See also*

---

[1] Judicial notice requested. *See* http://www.chicagotribune.com/news/local/breaking/ct-met-laquan-mcdonald-conspiracy-case-court-20181004-story.html (accessed November 15, 2018); *Cause of Action v. Chicago Transit Auth.*, 815 F.3d 267, 277 n.13 (7th Cir.) (judicial notice appropriate for matters of public record).

11

*McGowan v. Motel Sleepers, Inc.*, Case No. 17-cv-7284, ¶34 (N.D. Ill. August 21, 2018) (Judge Kendall denying dismissal of IWA claim against an individual). Accordingly, the weight of recent authority in this district is that there is individual liability under the IWA.

Third, the one-year statute of limitations does not apply here because the continuing violation rule applies. The Illinois Supreme Court is clear that the doctrine "does not involve tolling the statute of limitations because of delayed or continuing injuries, but instead involves viewing the defendant's conduct as a *continuous whole* for prescriptive purposes." *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 279 (2003). "A continuing violation or tort is occasioned by continuing unlawful acts and conduct, not continual ill effects from an initial violation." *Id.* "Thus, where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." In this case, Lett's protected refusals caused Fairley to keep taking retaliatory actions against Lett, again and again. *SAC*, ¶71. While Lett includes the investigation and his termination in the SAC, he does so – and may do so – because Fairley kept taking retaliatory actions against him after those ones. The retaliatory acts in this case, viewed as a whole in the SAC, have never stopped. *Spalding v. City of Chicago*, 186 F. Supp. 884, 919 (N.D. Ill 2016) held that the continuing violation doctrine applied to an IWA claim strikingly similar to that in this case, reasoning that where the "tort involves continuous or repeated injurious behavior, by the same actor and of a similar nature" all of the conduct against the same actor, whether in or out of the one-year period, was actionable under the IWA. *Id.* Here, the allegations all involve continuous and repeated behavior by Fairley, and it is all similarly actionable under the continuing violation doctrine expressed in *Spalding*.

Fourth, the twelve adverse actions Lett alleges are (1) individually sufficiently material to support an IWA claim; and, (2) collectively sufficiently material to support an IWA claim. The IWA was amended in 2009 to expand the scope of conduct that could give rise to a cause of action for an employee under the Act. *See Elue v. City of Chicago*, Case No. 16-cv-09564, \*10 (N.D. Ill. June 20, 2017). "The Court applies 'an objective test to determine whether an action is materially adverse,' but whether it meets that standard 'depends on the context and circumstances of the particular case.'" *Zinn v. Village of Sauk Village*, Case No. 16-cv-3542 (J. Blakey, March 1, 2017). "[R]etaliation, short of termination, under the IWA is defined as an 'act or omission [that] would be *materially adverse* to a reasonable employee.'" *Elue*, 16-cv-09564, \*10 (quoting *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 2015 IL App. (5th) 140443-U, ¶23). "A materially adverse employment action is 'one that significantly alters the terms and conditions of the employee's job.'" *Id.* (quoting *Owens v. Dep't of Human Rights*, 403 Ill.App.3d 899, 919 (1st Dist. 2010)). Collectively, "[r]etaliatory harassment can rise to the level of a materially adverse employment action (and coworker campaigns of harassment should be viewed in their totality)," "but such acts of harassment must cause a significant change in the plaintiff's employment status." *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). This district and Illinois courts are clear that "[a]n effective demotion or substantial change in employment responsibilities can be a materially adverse employment action." *Elue* at \*13 (citing *Owens*, 403 Ill.App.3d 899 at 919). Collective campaigns can be actionable as much as individual actions. *Stutler*, 263 F.3d at 703. *See also Spalding*, 186 F.Supp.3d 884 at 918 (finding that collective evidence of threats, dead-end assignments, shift transfer, and a trumped-up investigation, all without loss of pay, was materially adverse for IWA purposes). Here, Lett alleges 12 adverse actions that, individually and collectively, constitute actionable bases for his

IWA claim. *SAC*, ¶71 (itemizing twelve adverse actions, including termination, transfers, removal of job responsibilities, refusal to instate to COPA, and loss in pay). Fairley seems to say that the fact that she and the other Defendants failed in their effort to terminate Lett, then did everything possible to destroy him short of termination, including putting him in his current employment twilight zone, is not adverse and not actionable under the IWA. No reasonable employee could look at Lett's circumstances and conclude that his situation means that he would be safe in his own whistleblowing activity given that Lett has suffered (1) a loss of pay, (2) status, (3) all Investigator job responsibilities, (4) removal from IPRA/COPA, (5) non-reinstatement to IPRA/COPA, (6) administrative leave with pay, (7) refusal to permit Lett to work *at all*, and (8) major reputational, emotional distress, and stigma damage. Individually, these actions constitute significant alterations in the terms and conditions of Lett's employment. Fairley baldly asserts that the adverse actions are not materially adverse, citing no cases explaining why. To the contrary, the cases establish that these actions are materially adverse.

Finally, the SAC states a causal nexus between Lett's refusals and the adverse actions. *SAC*, ¶82, 123 (direct and proximate cause), ¶¶93-94 (moving force for *Monell*); ¶¶110-112 (adverse actions linked to deprivations). It is patently obvious that the Complaint is alleging that Lett's refusals to play foul ball, as Fairley wanted him to do, led to *all* of the subsequent adverse actions. This is in the SAC, where it states, "[w]ithin just two weeks of LETT's persistent refusal to lie in his investigative findings at FAIRLEY's orders, FAIRLEY removed LETT from General Investigations, and later ordered him transferred to the intake complaint section, and then to janitorial duties." *SAC*, ¶42. The SAC then states that "[s]uch transfer, and *all other adverse actions in this [SAC]*, were in retaliation for LETT's refusal to lie about matters of fact in the investigative report." *SAC*, ¶43.

Fairley is also saying that because she committed other adverse actions against Lett after his transfer and termination, that such interrupts the causal nexus between the refusals and the adverse actions. Not only is such a matter to be determined through discovery, not on a 12(b)(6), it ignores the reality of how retaliation and harassment work, and, if true, it would encourage retaliators and harassers to keep committing adverse actions because it would then eliminate causal connections between protected conduct and prior adverse actions. The causal connection between the adverse actions and the protected refusals are properly well-pleaded in the SAC, and the Motion should be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiff requests that this Court deny Fairley's Motion.


Respectfully submitted,

*/s Cass T. Casper*

---

Cass T. Casper
One of Plaintiff's Attorneys
Electronically filed: November 20, 2018

*Cass T. Casper, Esq.*
IL Attorney Registration Number 6303022
TALON LAW, LLC
79 West Monroe Street, Suite 1213
Chicago, Illinois 60603
P: (312) 351-2478 F: (312) 276-4930 E: ctc@talonlaw.com

*Christopher Cooper, Esq.*
Law Offices of Christopher Cooper, Inc.
79 West Monroe Street, Suite 1213
Chicago, Illinois 60603
P: (312) 473-2968 E: cooperlaw3234@gmail.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that the attached Plaintiff's Response to Defendant Fairley's Motion to Dismiss was served on the below-designated attorneys by electronic service via the Court's ECF System on November 20, 2018, and that the listed attorneys are all registered e-filers.

Joann Lim, Esq.                joann.lim@cityofchicago.org
Susan O'Keefe, Esq.            susan.okeefe@cityofchicago.org
Mark Bereyso, Esq.             mark.bereyso@cityofchicago.org
Lisa Noller, Esq.              lnoller@foley.com
Hayley Altabef, Esq.           haltabef@foley.com
Robert Seltzer, Esq.           rseltzer@cornfieldfeldman.com
Elisa Redish, Esq.             eredish@cornfieldfeldman.com

*s/Cass T. Casper*
_____
Cass T. Casper