**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KELVIN LETT, | ) | |
| | ) | Case No. 18 cv 4993 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. John Robert Blakey |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN FURTHER SUPPORT
OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
BY DEFENDANTS ROBERTS, MOORE, O'SHAUGHNESSY AND GRBA**

Defendants Sydney Roberts ("Roberts"), Annette Moore ("Moore"), Helen O'Shaughnessy ("O'Shaughnessy") and Mark Grba ("Grba") (collectively, "Movants"), through their attorney, Edward N. Siskel, Corporation Counsel of the City of Chicago, submit the following Reply Memorandum in further support of their Motion to Dismiss Counts I, III, IV and V of the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

I.    <u>Argument</u>

    a.    **Lett fails to state a claim for First Amendment retaliation in Count I.**

        1.    **Lett fails to allege he spoke as a private citizen.**

In his third attempt to state a cause of action, Lett repeatedly and consistently alleges he was retaliated against for refusing to include a *finding* in an investigative report because he believed such a *finding* was unsupported by the evidence.  *See* Second Amended Complaint ("SAC") ¶ 30 (Fairley pressured investigators to change their investigative reports to include *findings, conclusions and outcomes* that investigators did not believe were supported by the investigation), ¶ 32 (Fairley ordered Lett to alter his reports "so as to lie" about his *findings*), ¶ 33 (despite Lett's *findings*, Fairley told Lett he needed "to lie about" his *findings* to reflect an officer shooting was unjustified), ¶ 34 (Lett refused to

*find* that a gun was planted on the victim by the officers because "he had no evidence to support that *finding*"), ¶ 35 (Lett was familiar with the evidence and was certain there was no factual basis to include a *finding* that a gun was planted).

Significantly, Lett did *not* allege he was ordered to fabricate evidence, conceal evidence, destroy evidence, tamper with evidence, falsely swear, sign an oath of any kind, falsely testify, suborn perjury, or impede, obstruct or affect any type of legal proceeding. According to Lett's allegations, which are accepted as true solely for purposes of this motion, Lett was told to include a *finding* in an internal IPRA report recommending discipline of a Chicago police officer which he thought was unsupported by the underlying evidence. This was part of his job, however, and as such, Lett fails to plead he acted as a private citizen for purposes of his First Amendment retaliation claim in Count I. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *Davis v. City of Chicago*, 889 F.3d 842, 845 (7th Cir. 2018).

In his responses to the pending motions to dismiss, Lett painstakingly avoids mentioning the word "finding" at all, and mischaracterizes his disagreement over whether a "finding" was supported by the evidence as "lies." Response to Motion to Dismiss by Roberts, *et al.*, p. 2 ("put false evidence in a report"), p. 3 ("make falsehoods in his reports"), p. 5 ("include false statements of fact" and "place false statements in reports"), p. 6 ("refusing to lie about facts in a police investigation"). Lett thereby attempts to compare his case to a police officer's refusal to change a police report "*as to [the excessive force] he witnessed*" during an arrest made by his partner (*Jackler v. Byrne*, 658 F.3d 225, 240 (2nd Cir. 2011) (emphasis added)) and to providing sworn testimony pursuant to a subpoena in a criminal trial. *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014).

The attempt is unavailing for two reasons. First, Lett's "findings" in investigative reports were not sworn, nor were they testimony. Reports may have *included* witness statements (SAC ¶ 35), but Lett cannot allege *he* provided testimony as a witness in cases he handled as an IPRA

investigator. Indeed, Lett does not allege he was a witness to police misconduct. He did not make any statement as a witness in a police misconduct case. He was not asked to provide a false statement as a witness in a police misconduct case. Lett *reported* on evidence in police misconduct cases and made recommended *findings and conclusions as to police discipline*, subject to the direction of IPRA's Chief Administrator. Lett's role was materially different from the role of the parties (as witnesses) in *Jackler v. Byrne*, 658 F.3d at 240 and *Lane v. Franks*, 134 S. Ct. at 2379.

The findings, conclusions and disciplinary recommendations derived from the evidence were not themselves evidence. *Davis v. City of Chicago*, 889 F.3d at 845-46. These ultimately were to be made by IPRA's Chief Administrator, and Lett's alleged refusal to revise his findings pursuant to the Chief Administrator's alleged instructions was not protected by the First Amendment. *Id.* Lett cannot avoid the controlling effect of *Davis* by mischaracterizing the facts he alleged with misleading language in his response.

Second, Lett cannot defeat defendants' motions to dismiss by attempting to allege a different set of facts in his response brief. *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreens Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (citing "axiomatic rule that a plaintiff may not amend his complaint in his response brief"). Lett has had three opportunities to allege he spoke as a private citizen, with notice of defendants' position herein, and has amply demonstrated he cannot plead a viable First Amendment retaliation claim. For this reason, Count I should be dismissed, with prejudice.

### 2. Lett fails to allege Movants' personal involvement in alleged retaliation.

In response to Movants' motion, Lett indicates he seeks to impose liability on Movants under a theory of a conspiracy to violate his constitutional rights. Response to Motion to Dismiss by Roberts, *et al.* pp. 6-7. Lett cites his allegations that O'Shaughnessy and Grba "were in

agreement [with Fairley] to conduct a deficient and improper investigation into Lett in order to justify his termination," allegedly in order to "personally gain Fairley's approval." SAC ¶¶ 52-55. The alleged conspiracy further encompassed Moore, O'Shaughnessy and Grba conspiring with Fairley to deprive Lett of his First Amendment rights by placing him on *paid* administrative leave at IPRA for a month in retaliation for "utilizing his contractual rights under a union contract." *Id.* ¶¶ 60, 68. Still later, Roberts, COPA's Chief Administrator since April 2018, "continued to deprive" Lett of his (nonexistent) position at IPRA, or a "substantially similar position with COPA," in "further retaliation" for Lett's protected activity. *Id.* ¶¶ 69, 81. Lett submits all this is plausible and should be subject to discovery. Response p. 7.

"[B]efore defendants become entangled in discovery proceeding in a case alleging a vast, encompassing conspiracy . . . plaintiff must meet a high standard of plausibility." *Roehl v. Merrilees*, No. 11 C 4886, 2012 WL 1192093 at *8 (N.D. Ill. April 10, 2010) (internal quotation omitted), *citing Cooney v. Rossiter*, 583 F.3d 967,971 (7th Cir. 2009). Lett's mere conclusions that Movants conspired to retaliate against him are themselves insufficient to withstand a motion to dismiss. SAC ¶¶ 54, 67, 68, 69. *E.g., Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011); *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009); *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1046 (N.D. Ill. 2018); *Vazquez v. Village of Bensenville*, 22 F. Supp. 3d 861, 870 (N.D. Ill. 2014); *Gomez v. Garda CL Great Lakes, Inc.*, No. 13 C 1002, 2013 WL 4506938 at *4 (N.D. Ill. Aug. 23, 2013). Lett distinguishes none of these cases in his response.

The conclusions are furthermore speculative and implausible. It is fevered speculation to allege certain Movants conducted a *shoddy* investigation in order to gain their boss' *approval*. And it is *beyond* speculation - and frivolous - to individually name a later-named Chief Administrator of COPA as a defendant, under the theory she might have known a former employee of a separate, defunct

4

City agency was unhappy and did not intervene to accommodate him, in order to *retaliate*. Lett does not even attempt to explain how any of this relates to CPD's decision to place Lett on paid administrative leave in his current position.

As agents of a government entity jointly pursuing the City's lawful business, Movants were not capable of conspiring when they committed acts within the scope of their employment, even when said acts are alleged to be discriminatory or retaliatory. *Strauss v. City of Chicago*, -- F. Supp. 3d - - , No. 17 C 5348, 2018 WL 467585 at *11 (N.D. Ill. Sept. 28, 2018) (finding intra-corporate conspiracy doctrine applicable absent "extraordinary circumstances"), *citing Wright v. Illinois Department of Children and Family Services*, 40 F.3d 1492, 1508 (7th Cir. 1994). Lett's conspiracy claim should be dismissed.

### 3. Lett fails to allege an adverse action.

Lett does not dispute he must allege a materially adverse action. Response pp. 7-8. Lett argues the 12 alleged adverse actions cited at paragraph 71 of the Second Amended Complaint meet this standard, viewed individually or collectively. Response p. 7. Lett misses the entire point of Movants' motion. Movants can *only* be held liable for actions they *individually* took. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (". . . a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[i]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation'"). Lett does not allege any of the Movants terminated his employment. SAC ¶ 51. He alleges, among Movants, only Moore placed him on paid administrative leave at IPRA. SAC ¶ 60. No Movant is alleged to have placed Lett on paid administrative leave at CPD.

5

Lett does not even argue that a one month paid leave at IPRA was materially adverse. *Nichols v. Southern Illinois University – Edwardsville*, 510 F.3d 772, 786-87 (7th Cir. 2007). Hence, Lett fails to allege *any* Movant individually took a materially adverse action against him to support his Section 1983 claim. Movants should be dismissed for this reason.

### 4. Movants are entitled to qualified immunity.

Lett cites Judge Hamilton's concurrence in *Davis v. City of Chicago*, 889 F.3d at 846-47, and the cases cited therein, *Jackler v. Byrne*, 658 F.3d 225, 240 (2nd Cir. 2011) and *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014), to argue his refusal to change a finding in his investigative report pursuant to the Chief Administrator's instructions was "clearly established" First Amendment activity. Response p. 10. As explained above, Lett cannot compare his role as an IPRA investigator to the plaintiffs in either of those cases. Lett did not witness police misconduct, was not asked to provide a statement or a report as a witness to police misconduct, was not told to provide a false statement as a witness to police misconduct, and was not asked to testify as a witness at a trial. As part of his job, Lett allegedly refused to change a "finding" in a report recommending discipline because he did not believe the finding was *supported by the underlying evidence.* SAC ¶ 35. This not only fell squarely within Judge Kanne's opinion in *Davis*, but to the extent it did not, it was far from a "clearly established" First Amendment right.

Similarly, Lett did not report his personal knowledge of police misconduct outside established channels, as was the case in *Spalding v. City of Chicago*, 24 F. Supp. 3d 765, 776 (N.D. Ill. 2014) and *Kristofek v. Village of Orland Hills*, 832 F.3d 785, 793 (7th Cir. 2016). Neither of those cases clearly established protected activity under the "particular circumstances" of this case. *District of Columbia v. Wesby*, -- U.S. -- , 138 S. Ct. 577, 590 (2018). For these reasons, Movants are entitled to qualified immunity on Count I. *Purtell v. Mason*, 527 F.3d 615, 626 (7th Cir. 2008) (qualified immunity

appropriate in light of uncertainty whether speech was protected); *Brown v. Chicago Board of Education*, 973 F. Supp. 2d 870, 880-881 (N.D. Ill. 2013).

      **b.     Lett fails to state a claim for deprivation of property without due process in Count III.**

            **1.     Lett fails to allege the deprivation of a "property interest."**

In Count III of the Second Amended Complaint, Lett complains he was deprived of a *certain level of pay* when he was placed on paid administrative leave following his reinstatement at IPRA. *Id.* ¶¶ 102, 103. Movants move to dismiss as Lett fails to allege a "property" interest in *not* being placed on paid administrative leave while maintaining his position as an IPRA investigator. *Coffman v. Indianapolis Fire Department*, 578 F.3d 559, 567 (7th Cir. 2009). Further, any plausible loss of income during Lett's one month paid leave at IPRA was an insufficient deprivation of "property" to trigger federal due process. *Luellen v. City of East Chicago*, 350 F.3d 604, 613-14 (7th Cir. 2003); *Townsend v. Vallas*, 256 F.3d 661, 676 (7th Cir. 2001); *Swick v. City of Chicago*, 11 F.3d 85, 86 (7th Cir. 1993).

In his response, Lett cites to his allegation that he lost $9,000 a year in income. Response p. 13. This is implausible as it relates to Lett's one month paid leave at IPRA. By failing to address Movants' argument relating to Lett's one month leave at IPRA, Lett effectively waives this claim. *C & N Corp. v. Gregory Kane & Illinois River Winery, Inc.*, 756 F.3d 1024, 1026 (7th Cir. 2014); *Zicarelli v. Dart*, No. 17 cv 3179, 2018 WL 3046956 at *2 (N.D. Ill. June 20, 2018).

Further, Movants are not alleged to have had any role in placing Lett on administrative leave at CPD, even as alleged co-conspirators, and cannot be held individually liable for any alleged loss resulting from Lett's paid administrative leave while he was employed by CPD.

            **2.     Lett was afforded adequate process.**

Lett likewise fails to address Movants' argument that Lett was afforded adequate process relating to his paid administrative leave, and again thereby waives this claim. *Id.*

### 3. Movants are entitled to qualified immunity.

Lett's protected interest in not being placed on *paid* leave and the requirement, if any, for a "pre-deprivation" hearing were not clear under the circumstances in this case. *Coffman*, 578 F.3d at 567; *Luellen*, 350 F.3d at 613-14. Lett cites *Zinn v. Village of Sauk Village*, No. 16 cv 3542, 2017 WL 783001 at *4 (N.D. Ill. March 1, 2017), but that case addressed qualified immunity in the context of the seizure of a vehicle without probable cause or a warrant under the Fourth Amendment, not the question of whether a one month paid administrative leave implicated a "property" interest triggering the due process clause. Movants are entitled to qualified immunity on Lett's due process claim in Count III. *Reichle*, 566 U.S. at 664.

### c. Lett fails to state a claim for First Amendment retaliation in Count IV.

### 1. Lett's union grievance was not a matter of public concern.

Lett cites *Berry v. Illinois Department of Human Services*, No. 00 C 5538, 2003 WL 22462547 at *12 (N.D. Ill. 2003) to argue the public concern test may not apply to associational claims. Response p. 13. But *Berry* expressly noted "[p]ursuing a matter of individual concern through a union grievance process does not make it protected First Amendment conduct." *Id.*, *citing Griffin v. Thomas*, 724 F. Supp. 587, 589 (N.D. Ill. 1989). *See also Bivens v. Trent*, 591 F.3d 555, 561 (7th Cir. 2010) (union grievance relating to plaintiff's personal illness filed to advance personal interests). The public concern test applies to Lett's First Amendment retaliation claim in Count IV.

Lett argues his union grievance involved a matter of public concern (police discipline) as reflected by the press release announcing the commencement of COPA's operations in September 2017. Response p. 13. The argument is without merit. Lett's grievance challenged the *termination of his IPRA employment*, not a matter of "police discipline." SAC ¶¶ 56-58. The fact that Lett was employed by a public entity did not somehow elevate his private employment dispute to a matter of

public concern. The COPA press release had nothing to do with Lett's grievance seeking reversal of his termination from IPRA.

### 2. Lett fails to allege any personal involvement of Movants.

Lett cites paragraphs 60 and 61 of the Second Amended Complaint to argue he adequately alleged Movants' personal involvement. Response p. 13. Those paragraphs state only Fairley and Moore were involved in placing Lett on administrative leave at IPRA, not Roberts, O'Shaughnessy or Grba. Movants are not alleged to have had any role in Lett's administrative leave at CPD. As to Moore, the allegation fails because Lett's one month paid leave at IPRA was not a materially adverse action. *Nichols*, 510 F.3d at 786-87.

### 3. Movants are entitled to qualified immunity.

Lett's First Amendment rights relating to his union grievance, if any, were not clear. *Balton*, 133 F.3d at 1040; *Bivens*, 591 F.3d at 561. Lett's argument that his grievance concerned a matter of public concern is without merit. Lett cites no clear precedent that his grievance in fact constituted protected First Amendment activity. Movants are entitled to qualified immunity on Lett's First Amendment retaliation claim in Count IV. *Reichle*, 566 U.S. at 664.

### d. Lett fails to state an IWA claim against Roberts and Moore in Count V.

### 1. Lett fails to allege he refused to engage in illegal conduct.

Lett again attempts to compare the inclusion of a "finding" in an internal IPRA report to the statements of witnesses in police misconduct cases in order to sustain his Section 20 claim under the Illinois Whistleblower Act (the "IWA"). Response p. 13; 740 ILCS 174/20. As explained above, the comparison is factually unsupported and unwarranted. Unlike the plaintiff in *Jackler v. Byrne*, 658 F.3d at 240, and the defendants "in the Van Dyke case," Lett was not a witness to police misconduct. He did not make a statement as a witness in a police misconduct case. He was not

asked to provide a false statement as a witness in a police misconduct case. Lett alleges that as an IPRA investigator, he made findings and conclusions in an internal report as to whether a member of the Chicago Police Department should be disciplined, and refused, in one instance, to change a "finding" because he believed it was unsupported by the evidence. SAC ¶¶ 30, 32, 33. As also noted above, by City ordinance, the Chief Administrator was ultimately responsible and authorized to make any "finding" and recommendation of discipline. *Davis v. City of Chicago*, 889 F.3d at 845.

The question in this case, therefore, is whether complying with the Chief Administrator's authority and direction to revise findings and conclusions in a report recommending discipline would violate a state or federal law. 740 ILCS 174/20. Lett's need to mischaracterize his allegations with misleading language and to invoke materially distinguishable cases demonstrates he is incapable of citing an *applicable* law which would have been violated in this case. Indeed, there is none to cite. As the facts alleged do not show a violation of any state or federal law, Lett fails to state a Section 20 claim under the IWA. *See Corah v. Bruss Co.*, 2017 IL App (1st) 161030 at ¶ 16 (2017) (refusal to complete allegedly "false" accident investigation report, used as basis for workers' compensation claim, did not present a violation of any law). *See also City of Chicago v. Janssen Pharmaceuticals, Inc.*, 2017 IL App (1st) 150870 at ¶ 20 (2017) (finding municipal ordinance did not constitute "federal or State law" under the plain language of the Illinois Freedom of Information Act).

## 2. Roberts and Moore were not Lett's employer.

In order to bring an action under Section 30 of the Illinois Whistleblower Act (the "IWA"), Lett must allege he was an "*employee*," defined as "any individual who is employed on a full-time, part-time or contractual basis *by an employer*." 740 ILCS 174/5 (emphasis added). The term "employer" is defined as an individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State, and "any person

acting within the scope of his or her authority express or implied on behalf of those entities in dealing with *its employees*." *Id.* (emphasis added). Roberts and Moore seek dismissal of Count V as to them because Lett cannot allege he was their employee. To the contrary, Lett alleges he was employed by the City of Chicago. SAC ¶ 5.

Lett cites district court decisions focusing on the IWA's definition of "employer," and specifically, the language including within the definition of "employer" of "any person acting . . . on behalf of [an entity] in dealing with its employees." *Bello v. Village of Skokie*, 151 F. Supp. 3d 849 (N.D. Ill. 2015).[1] The *Bello* decision and those following it, however, fail to acknowledge that only an "employee" may bring an action against an "employer," and that to come within the definition of an "employee," a plaintiff must allege that he or she is "employed" by an "employer." 740 ILCS 174/5, 174/30. Consequently, although an individual agent may be included within the definition of "employer," an employee cannot allege he or she is "employed" by the agent. Judge Gottschall addressed this language in the *Parker* decision when she stated:

> There is good reason to interpret the IWA to allow actions only against the entity that actually employed the plaintiff, not against individual employees of that entity. In the context of federal discrimination statutes such as the ADA and Title VII, the definition of "employer" similarly includes the employer's "agents," but that "is simply a statutory expression of traditional *respondeat superior* liability and imposes no individual liability on agents." [citation omitted]. The language in the IWA appears to be patterned on the federal statutes, and the similar language suggests that the Illinois legislature did not intend to impose individual liability on an employer's agents, but merely to express that the agents' acts are attributable to the employer. . . .

*Parker v. Illinois Human Rights Commission*, 2013 WL 5799125 at *9 (N.D. Ill. October 25, 2013). Respectfully, Judge Gottschall's reasoning is the more persuasive interpretation, in that it harmonizes the IWA's definitions of "employee" and "employer" to provide an employee's right of

---

[1] Judge Kennelly, the author of the *Bello* decision, more recently dismissed individual defendants to an IWA claim in *Michno v. Cook County Sheriff's Office*, No. 13 C 7163, 2018 WL 723202 at *2 (N.D. Ill. Feb. 6, 2018).

action against an employer for prohibited retaliation by the employer *or the employer's agents* under the traditional standard of *respondeat superior*.

Additionally, regardless of the Court's ruling on the issue of whether Lett could qualify as an "employee" of an employer's individual agents, Lett still cannot allege he was ever employed by COPA. The claim against Roberts must be dismissed.

### 3. Lett's IWA claim was barred in part by the statute of limitations.

Any monetary claims for alleged actions pre-dating July 22, 2017, including Lett's termination, are time-barred and should be dismissed. 745 ILCS 10/8-101(a). *See Elue v. City of Chicago,* No. 16 cv 9564, 2017 WL 2653082 at *8 (N.D. Ill. June 20, 2017) (Tort Immunity Act's one year statute of limitations applies to IWA claim); SAC ¶ 120 (a)-(d). Lett relies on the "continuing tort" doctrine in order to bring his stale claims within the actionable period of limitations. Response p. 6. The attempt fails.

As a general matter, the statute of limitations begins to run "when the interest at issue is invaded." *Taylor v. Board of Education of the City of Chicago*, 2014 IL App (1st) 123744 at ¶ 46 (2014). Where there is an "overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest . . . despite the continuing nature of the injury." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009), *citing Feltmeier v. Feltmeier*, 207 Ill.2d 263, 279 (2003). In such cases, the "continuing violation" rule does not apply. *Id.* Discrete acts are separate and identifiable decisions. *See Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill.2d 325, 348-49 (2002) (decisions to allocate vehicles among dealerships, repeatedly made four times per month, each constituted discrete action). The period of limitations on discrete actions begins to run when the *act occurs. Taylor,* 2014 IL App (1st) 123744 at ¶ 46.

Lett's February 2017 termination was a discrete action on which the statute of limitations began to run immediately. Lett clearly considered his termination to be actionable at the time, as he filed a union grievance in July 2017. SAC ¶ 56. Lett admits his administrative leaves were "entirely" separate actions from his termination. *Id.* ¶ 66. Lett's attempt to "reach back" and bring discrete actions predating July 2017 within the IWA period of limitations by arguing they are part of a "continuing tort" should be rejected.

The "continuing tort" or "continuing violation" doctrine applies to continuous or repeated injurious behavior, by the same actor and of a similar nature. *Id.* Under these circumstances, a cause of action accrues on the date of final injury or when the tortious conduct ceases. *Id.* The continuing tort doctrine permits suit to be delayed until a series of wrongful acts "blossoms" into an injury on which suit can be brought. *Limestone Development Corp. v. Village of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008).

The continuing violation theory does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill.2d 325, 348-49 (2002); *Kidney Cancer Association v. North Shore Community Bank*, 373 Ill.App.3d 396, 405-06 (1st Dist. 2007). Nor can a plaintiff use the continuing tort doctrine to "reach back" to events constituting discrete actions in order to form a continuing violation claim. *Rouse v. Chicago Transit Authority*, No. 13-cv-5260, 2016 WL 5233591 at *8 (N.D. Ill. Sept. 21, 2016), *citing Tinner v. United Insurance Company of America*, 308 F.3d 697, 708 (7th Cir. 2002) (transfer was a discrete act); *Dasgupta v. Univ. of Wisconsin Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997) (failure to promote was discrete event, not a continuing violation). Courts are particularly reluctant to find continuing violations when the plaintiff already perceived an act as a violation. *See, e.g., Jones v. Merchants Nat. Bank & Trust*, 42 F.3d 1054, 1058 (7th Cir. 1994) (declining

to apply continuing violation to promotion, since plaintiff knew or should have known of claim); *McDonough v. City of Chicago*, 743 F. Supp. 2d 961, 971 (N.D. Ill. 2010) (same as to suspension and failure to promote). As a result, Lett's monetary claims for alleged actions pre-dating July 22, 2017, including his termination, are time-barred and should be dismissed.

### 4. Lett fails to allege a materially adverse action.

Lett completely fails to address Roberts and Moore's adverse action argument. Response pp. 14-15. Moore allegedly placed Lett on paid administrative leave at IPRA for a month. This was not a materially adverse action sufficient to support an IWA claim. *Nichols*, 510 F.3d at 786-87. Moore is not alleged to have had any role with the decision to place Lett on administrative leave *at CPD*. Roberts is not alleged to have been even employed with the City at the time Lett was placed on the administrative leaves. She is not alleged to have made any decision regarding Lett at all.

### 5. Lett fails to plausibly allege proximate causation.

The Illinois First District Appellate Court recently examined the element of causation under the Illinois Whistleblower Act in the same manner as retaliatory discharge cases. *Brummel v. Grossman*, 2018 IL App (1ˢᵗ) 170516 at ¶¶ 49, 50 (2018) (opinion subject to revision). In both types of cases, a plaintiff must establish a causal relationship between the employee's protected activity and the alleged adverse action. *Id.*

Lett believes his conclusory allegation of "proximate cause" or a continuing "campaign" to retaliate is sufficient to withstand the City's motion to dismiss. Response p. 12. He submits his protected refusal to change a finding in June 2016 led to *all* of the subsequent adverse actions. This bare conclusion of proximate cause, however, is not *plausible* under the facts alleged. Lett does not even attempt to explain how Lett's paid administrative leave at IPRA, and later, at a separate City Department, were plausibly connected to Lett's alleged refusal to change a finding in an investigative

report *over a year earlier*. *See Wheeler v. Piazza*, No. 16 cv 3861, 2018 WL 835353 at *4 (N.D. Ill. Feb. 13, 2018); *Ghiles v. City of Chicago Heights*, No. 12 cv 7634, 2016 WL 561897 at *2 (N.D. Ill. Feb. 12, 2016).

Likewise, Lett ignores the effect of what he *admits* to be an intervening motive to place him on paid administrative leave: the July 25, 2017 arbitration award. Illinois law rejects the proposition there can be more than one "proximate cause" in retaliatory discharge cases (and by analogy, in IWA cases. *See Brummel v. Grossman*, 2018 IL App (1st) 170516 at ¶¶ 49, 50). *Michael v. Precision Alliance Group, LLC*, 2014 IL 117376 at ¶¶ 38-39 (2014); *Groark v. Thorleif Larsen & Sons, Inc.*, 231 Ill.App.3d 61, 65-6 (1st Dist. 1992). The intervening motive severs any proximate causation that could be plausibly alleged between Lett's prior refusal to alter an investigative report and Lett's administrative leaves at IPRA and CPD. *Id.*

Finally, Lett fails to provide any plausible explanation of a connection between the *CPD's* decision to place Lett on paid administrative leave after September 2017 and his alleged refusal to change a finding in an IPRA report in June 2016. *Hillman v. City of Chicago*, 834 F.3d 787, 794 (7th Cir. 2016) (failure to show retaliation by separate decision-maker with no knowledge of protected activity). For all these reasons, Lett fails to state a claim under the IWA in Count V.

## II.   Conclusion

Wherefore, Defendants Roberts, Moore, O'Shaughnessy and Grba respectfully request Counts I, III, and IV be dismissed as to them, with prejudice, and any further relief the Court deems appropriate.

Additionally, Defendants Roberts and Moore respectfully request Count V be dismissed as to them, with prejudice, and any further relief the Court deems appropriate.

Dated: December 4, 2018

Respectfully submitted,

EDWARD N. SISKEL
Corporation Counsel of the City of Chicago

By: *Mark Bereyso*
MARK J. BEREYSO
JOANN G. LIM
Assistants Corporation Counsel

City of Chicago, Department of Law
Employment Litigation Division
30 North LaSalle Street, Suite 1020
Chicago, Illinois 60602
(312)744-6951
(312)744-8039