IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KELVIN LETT | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18 cv 04993 |
| vs. | ) | |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Hon. John Robert Blakey |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SHARON FAIRLEY'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Lett's response confirms he has no legitimate or cognizable legal claims against Fairley. First, Lett's effort to circumvent the clear holding of *Davis v. City of Chicago*—a case almost identical to Lett's—fails, dooming his First Amendment claim. Second, Lett has no *Monell* claim against Fairley because *Monell* claims do not exist against public officials in their individual capacities, a fact Lett ignores throughout his response. Third, Lett misunderstands Fairley's arguments regarding his alleged property interest—namely, a legal property interest may not be "implied" from a generic interest in freedom from administrative leave or loss of ancillary pay without due process. Lastly, Lett's arguments fail to undermine Fairley's qualified immunity for the actions he has alleged, and which should be dismissed in their entirety.

# ARGUMENT[1]

I. **Lett's attempt to re-define public speech still does not state a claim for First Amendment retaliation claim in Count I.**

To plead a First Amendment retaliation claim against Fairley, Lett must plausibly allege he spoke as a private citizen, and thereafter was punished for his private speech. *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (citing *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)). "Whether an employee speaks as an employee or a citizen depends on whether the speech was made 'pursuant to [his] official duties.'" *Davis v. City of Chicago*, 889 F.3d 842, 845 (7th Cir. 2018) (citing *Garcetti v. Cellabos*, 547 U.S. 410, 421 (2006)).

The Seventh Circuit already has addressed this issue in a case nearly identical to Lett's. In *Davis v. City of Chicago*, the Seventh Circuit held that IPRA investigators who refuse to revise investigative reports speak as public employees, not as private citizens. *Davis,* 889 F.3d at 845. This conclusion, according to the court, is "straightforward": IPRA investigators revise IPRA reports as part of their job duties. *Id*. But for their employment by IPRA, an investigator would have no reason to conduct an investigation, interview witnesses, review documents, draft an investigative report, edit the report, or even make changes to a report as directed by a supervisor. Investigators draft reports <u>only</u> in connection with their employment. Moreover, an investigator's refusal to revise an IPRA report—regardless of the requested revision—is part of his official job duties and responsibilities. *Id.* Because any alleged refusals are speech made pursuant to an investigator's duties as a government employee, they "fall[ ] outside of the First Amendment's scope." *Id.*

---

[1] Fairley also adopts and incorporates by reference arguments made by co-defendants Roberts, Moore, O'Shauhnessy and Grba in their reply brief. Dkt. 65, Reply Memo. In Support of Mot. To Dismiss SAC by Defs. Roberts, Moore, O'Shaughnessy, and Grba ("Individual Defendants' Reply"), at §§ I.a.1, I.a.3, I.a.4, I.b, I.c.1, I.c.3, and I.d.

In an effort to circumvent clearly established precedent, Lett ignores the controlling *Davis* opinion, instead relying on Judge Hamilton's concurrence, which he argues distinguishes changing a "fact" from altering an "evaluation of a fact." *Davis,* 889 F.3d at 846 (Hamilton, J., concurring). According to Lett, an IPRA investigator speaks as a public employee when he refuses to change an evaluation of a fact, but becomes a private citizen when he refuses to alter the facts themselves. Dkt. 56, Pl. Resp. to Fairley Mot. To Dismiss ("Resp.") at 2-3. This argument fails for several reasons. First, the *Davis* court did not base its decision on the razor-thin distinction Lett now attempts to make. Instead, the *Davis* court considered *all* IPRA report revisions part of Davis's "job duties." *Davis*, 889 F.3d at 845. Davis's own allegations underscore this point – he alleged the IPRA Chief Administrator ordered him to change both his ultimate findings and "the content of his…reports." *Davis v. City of Chicago, Illinois*, 162 F. Supp. 3d 726, 730 (N.D. Ill. 2016), *aff'd sub nom. Davis*, 889 F.3d at 842. The opinion never divides Davis's speech into two categories, much less finds any sub-category of speech in an IPRA report to be constitutionally more or less significant than another. And, Lett provides no reason to accept his alternative legal theory over the court's clear, controlling majority opinion. *See Lee v. City of Chicago*, 330 F.3d 456, 463 (7th Cir. 2003) (judicial concurrence not controlling); *Bickerstaff v. Nordstrom, Inc.*, 48 F. Supp. 2d 790, 802 n. 12 (N.D. Ill. 1999) (same).

Second, Lett's argument is nonsensical because it redefines "speech" in a manner unsupported by plain language and common sense. The "speech" in an IPRA report, or in revisions to an IPRA report, is a collection of words used to describe facts, analysis and conclusions based on evidence learned during an agency investigation. Under Lett's definition of "speech," he could argue the introduction to an IPRA report is public speech, but the conclusion is private speech. Or, he could argue interview summaries are private speech, and document summaries are public

speech. Or, he could argue that anytime an agency supervisor disagrees with an investigator, the latter's view converts to private speech. Any of these positions – including Lett's allegations – is absurd.

Third, even if this Court adopted Lett's theory (which it should not), Lett's purported refusals to follow alleged instructions more closely resemble "evaluations" than "facts." Lett alleges Fairley ordered him to change his "findings" to conclude police officers planted a gun on a shooting victim. SAC ¶¶ 32, 34. The "finding" in question is not a fact in and of itself, but rather a conclusion based on all the evidence obtained and analyzed pursuant to an investigation. To be sure, a fact would be a specific statement or physical evidence related to where the gun was found. An inference drawn from other facts about how the gun got there would be just an inference, and not a fact. Thus, even under his own reasoning, Lett spoke as a public employee when he refused to alter his findings.

Lett's other attempts to distinguish *Davis*—that Lett's refusals to "place falsehoods in his investigative reports" were not part of his ordinary job responsibilities—also fail because they are addressed in the *Davis* opinion. Resp. at 5. Davis, like Lett, argued his refusals did not fall "under his duties because his duties could not have included drafting inaccurate and misleading reports. . . ." *Davis,* 889 F.3d at 845. "But the fact that an employee may have good reasons to refuse an order, does 'not necessarily mean the employee has a cause of action under the First Amendment when he contravenes that order.'" *Id*. at 845–46 (quoting *Bowie v. Maddox*, 653 F.3d 45, 48 (D.C. Cir. 2011)).

Lett relies on two inapposite cases, *Jackler v. Byrne*, 658 F.3d 225 (2d. Cir. 2011) and *Lane v. Franks*, 134 S. Ct. 2369 (2014), in an attempt to circumvent the Seventh Circuit's clear and binding precedent in *Davis*. From these cases, Lett mistakenly presumes the First Amendment

4

protects all public employees who refuse to make any false statements in the course of their public duties and speech. Resp. at 3-5. But neither case supports this broad proposition. Rather, both *Jackler* and *Lane* conclude the First Amendment protects a public employee's refusal to lie only when that employee's speech has a clear "civilian analogue" with a penalty of perjury. *Jackler*, 658 F.3d at 238; *Lane*, 134 S. Ct. at 2378-79. Lett's speech had no civilian analogue, and therefore, was not protected.

An activity has a "civilian analogue" if both public employees and citizens who do not work for the government may engage in the activity. *Jackler*, 658 F.3d at 237. In contrast, speech "that owes its existence to a public employee's professional responsibilities" does not have a civilian parallel, and therefore, does not "infringe any liberties the employee might have enjoyed as a private citizen." *Garcetti*, 547 U.S. at 422. In *Jackler*, for instance, a former police officer spoke as a private citizen when he refused to change his own eyewitness account of another officer's misconduct. *Jackler*, 658 F.3d at 230, 241-42. The court reasoned that civilians routinely provide eyewitness reports, and any false statements given to the police expose those witnesses to criminal liability. *Id.* at 241. That the eyewitness in *Jackler* happened to be a police officer does not change his rights and obligations as a citizen who witnessed a crime. *Id.* Similarly, in *Lane*, a public employee retained his First Amendment rights when he testified against a coworker in court. *Lane*, 134 S. Ct. at 2375, 2380. The court found that "sworn testimony in judicial proceedings is a quintessential example of speech as a citizen" because "anyone who testifies in court bears an obligation, to the court and society at large, to tell the truth." *Id.* at 2379.

Here, on the other hand, Lett's speech has no civilian analogue. Lett was not asked to alter a report in which he was to provide an eyewitness account, nor was he being asked to provide sworn testimony in a proceeding. The communication at issue here is entirely based on Lett's

5

professional responsibilities. Civilians do not draft IPRA reports, much less write them under oath. Without a civilian analogue, Lett's alleged refusals to lie on IPRA reports are not protected speech under the First Amendment.

Finally, Lett misattributes portions of the case law used in his First Amendment argument. Lett cites two Supreme Court cases (*Perry v. Sinderman*, 408 U.S. 593 (1972) and *Connick v. Myers*, 461 U.S. 138 (1983)), but neither contains the language Lett quotes. Resp. at 2. In fact, both statements are in a completely different case, *Garcetti v. Cellabos,* which supports Fairley's position. *See* 547 U.S. at 419. The *Garcetti* court held employees who write internal memoranda pursuant to their job duties do not speak "as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. Like the plaintiffs in *Garcetti*, Lett refused to revise his IPRA report as part of his job as an IPRA investigator. He spoke as an employee, not as a citizen, and Lett's First Amendment claim should be dismissed with prejudice.

## II. Fairley is entitled to qualified immunity for the alleged conduct covered by the allegations in Count I.

Fairley is entitled to qualified immunity on Count 1. Qualified immunity protects all public officials from liability unless they violate a "clearly established" right. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). A right is only "clearly established" when "existing precedent. . . place[s] the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011).

Bafflingly, Lett argues Hamilton's concurrence in *Davis* "clearly established" Lett's First Amendment right to refuse to revise IPRA reports with information he believed to be false. Resp. at 9. However, a concurrence is not law, nor does it "produce a binding precedent" that creates a "clearly established" right. *Gibson v. Am. Cyanamid Co.*, 760 F.3d 600, 615 (7th Cir. 2014); *Lee*,

6

330 F.3d at 463 (judicial concurrence not controlling); *Bickerstaff*, 48 F. Supp. 2d at 802 n. 12 (same). Lett provides no reason why Fairley should have read the *Davis* concurrence to take precedence over the court's controlling opinion, much less why she would have interpreted the concurrence in the convoluted and nonsensical manner proffered by Lett.

Lett then argues Fairley should have inferred Lett's constitutional right of refusal based on other, factually distinguishable cases. This argument is unavailing. Most of the cases cited by Lett (Resp. at 9-10) involve public officials who engaged in speech with a clear civilian analogue, so are distinguishable for the reasons argued above. *Spalding v. City of Chicago*, 24 F. Supp. 3d 765, 769 (N.D. Ill. 2014) (police officers who reported crimes to the FBI and spoke to media about the lawsuit were acting in a civilian capacity); *Spiegla v. Hull*, 371 F.3d 928, 939 (7th Cir. 2004), *disapproved in later appeal*, 481 F.3d 961 (7th Cir. 2007) (correctional officer who "departed from the routine performance of her job duties" by questioning colleagues' conduct and prison policy was speaking civilly); *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 648 (7th Cir. 2013) (public employee who "helped another employee pursue a lawsuit" against the Gaming Board was acting in her civil capacity). None of these cases discuss speech routine to an employee's job, and none puts Fairley on notice that Lett's alleged refusals should receive constitutional protection.

Lett's own response proves this point. According to Lett, *Lane v. Franks* "clearly established that the First Amendment protects public employees providing truthful testimony, compelled by subpoena, outside the course of ordinary job responsibilities." Resp. at 10. This narrowly-tailored holding bears no relationship to Lett's alleged refusals in this case, which were not testimony, not compelled by subpoena, and not performed outside of Lett's ordinary job responsibilities. Fairley could not possibly conclude Lett's alleged refusal to lie on an IPRA report warranted the same protection as *Lane's* compelled testimony in an ancillary proceeding. What's

7

more, the court in *Lane* actually found the defendant had qualified immunity because unsettled Eleventh Circuit law did not provide clear notice of the plaintiff's constitutional right. *Lane*, 134 S. Ct. at 2282-83. If the *Lane* court found that a mere "discrepancy in Eleventh Circuit precedent" justified defendants' misinterpretation of the law, surely *Davis*'s uncontested, controlling opinion supports Fairley's understanding of Lett's purported actions. *Id.*

### III. Lett concedes he has no *Monell* claim against Fairley in Count II.

Lett does not make any substantive responses to Fairley's *Monell* arguments, and therefore forfeits them. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (on a motion to dismiss, plaintiff concedes the arguments to which he does not respond). Instead, he simply offers he conditionally will "concede" the *Monell* claim against Fairley if the Court finds he cannot sue IPRA or COPA "independently from the City." Resp. at 7. This position is both nonresponsive and nonsensical, and the Court should dismiss the *Monell* claim as to Fairley.

Lett's conditional offer is of no import, since a *Monell* claim against Fairley in her individual capacity never will exist, regardless of whether Lett may pursue a similar claim against IPRA, COPA, or the City. Lett pled this claim against Fairley in her *individual* capacity. SAC ¶¶ 10, 84. "Because personal-capacity suits are really suits against the official as an individual, not against the government entity, *Monell* is always inapplicable." *Potts v. Moreci*, 12 F. Supp. 3d 1065, 1071 n. 3 (N.D. Ill. 2013) (quoting *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 382 (7th Cir. 1988). Lett has not responded to this argument and has not moved to plead his *Monell* claim against Fairley in her official capacity.

Second, even if Lett re-pled his *Monell* claim against Fairley in her official capacity, the amendment would be futile. Lett himself concedes his claim against Fairley rises and falls with his claims against IPRA and COPA. Resp. at 7. Indeed, this is what Fairley argued in her motion

8

to dismiss: "[w]here the plaintiff names the government entity as a defendant in the suit, the claim against the individual in her official capacity is redundant" and the court should dismiss the official capacity claim. *Levin v. Madigan*, 697 F. Supp. 2d 958, 973 (N.D. Ill. 2010).

Finally, Lett cannot string along Fairley as an alternate defendant in the event his primary *Monell* claims do not survive. For the reasons argued in Fairley's motion to dismiss, Lett cannot establish a *Monell* claim against Fairley in her individual capacity. Nor can he establish a *Monell* claim against her in her official capacity. Thus, Lett's *Monell* claim in Count II must be dismissed without prejudice, regardless of this Court's ruling as to other defendants.

**IV.    Lett's arguments do not resuscitate his flawed deprivation of property without due process claim in Count III.**

Lett responds to Fairley's motion to dismiss Count III by reiterating his alleged property interest in his position as an IPRA investigator. Resp. at 7. This claim of a property interest, according to Lett, immunizes him from administrative leave with pay or a decrease in ancillary income without due process. Resp. at 7. Fairley does not dispute Lett's property interest in his job. Rather, Fairley argues that Lett implies he has a property interest in never being disciplined, or being immune from administrative leave, that has no basis in law. Dkt. 52, Fairley's Mem. In Support of Mot. To Dismiss Second Amended Cmplt., ("Mot.") at 10. But even if Lett had correctly read Fairley's motion, the cases he cites provide no support for his argument. *Misek* simply affirms a public employee's interest in her job, not in a particular level of pay or in active status. *Misek v. Chicago*, 783 F.2d 98, 100 (7th Cir. 1986) (plaintiffs have "a property interest *in their jobs*") (emphasis added). *Auriemma* only allows for the possibility of a protected interest in one's "job tenure" if the plaintiff can prove the agency has a custom and practice of making merit-based job decisions. *Auriemma v. City of Chicago*, 601 F. Supp. 1080, 1083 (N.D. Ill. 1984).

9

In fact, Lett's own citation shows that a property interest in one's job does not guarantee immunity from administrative leave. In *Palka v. Shelton*, 623 F.3d 447 (7th Cir. 2010), which Lett cites on page eight of his response, the Seventh Circuit found the plaintiff's suspension with pay did *not* trigger a due-process protection, even assuming the plaintiff had a general property interest in continued employment. *Id.* at 452.[2] The court reasoned the plaintiff's suspension with pay did not "impose a substantial indirect economic effect on the plaintiff." *Id.* Other cases similarly have found employees do not have protectable interests in administrative leave or the loss of ancillary income. *Coffman v. Indianapolis Fire Department,* 578 F.3d 559, 567 (7th Cir. 2009) (firefighter had no property interest in not being transferred to limited duty status); *Lullen v. City of East Chicago*, 350 F.3d 604, 613-14 (7th Cir. 2003) (no property interest in additional "on-call" pay not received during a paid suspension); *Townsend v. Vallas*, 256 F.3d 661, 676 (7th Cir. 2001) (loss of coaching income during suspension with pay did not implicate teacher's due process protection).

Lastly, Lett's emphasis on Fairley's alleged ongoing personal involvement in his career also is beyond logic. Fairley does not deny her involvement in Lett's employment history while they both worked at IPRA. However, Lett cannot allege in good faith that Fairley has, or ever had, any involvement in Lett's current employment with the Chicago Police Department, an agency for which she has never worked and over which she has no authority.

### V.     Fairley is entitled to qualified immunity for Counts II through IV.

"Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court. " *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

---

[2] Lett cited this case as an internal citation from another case, *Battle v. Alderden*, No. 14 C 1785, 2015 WL 1522943 (N.D. Ill. Mar. 30, 2015). Resp. at 8. While the quoted language does appear in *Palka*, it is not in *Battle.*

In particular, "[f]ailure to respond to an argument in a motion to dismiss permits an inference of acquiescence to that argument which acts as a waiver." *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017) (citing *Cincinnati Ins. Co. v. E. Atl. Ins. Co.,* 260 F.3d 742, 747 (7th Cir. 2001)); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Motor Exp., Inc.,* 181 F.3d 799, 808 (7th Cir. 1999) ("[a]rguments not developed in any meaningful way are waived"). Here, Lett's response only addresses Fairley's claim for qualified immunity as to Count I. Resp. at 8-9. He never once mentions *Monell,* his alleged property rights, or his purported associational right stemming from his union grievance, nor does he incorporate any qualified immunity arguments from Plaintiff's Response in Opposition to Motion to Dismiss of Defendants Roberts, Moore, O'Shaughnessy, and Grba.[3] Response, 9-10. Because Lett fails to rebut these arguments, Lett concedes Fairley should receive qualified immunity on Counts II through IV, and those counts should be dismissed as to her.

### VI. Lett's response does not save his First Amendment retaliation claim in Count IV of his IWA claim in Count V.

The allegations Lett made in his Second Amended Complaint in Count IV and Count V apply equally to Fairley and the other individual defendants Lett names in the SAC. Accordingly, Fairley incorporates fully and by reference the reply filed by defendants Roberts, Moore, O'Shaughnessy and Grba at Docket No. 65, sections I.c. - I.d.

---

[3] *See* Dkt. 57, Pl. Resp. to Roberts, Moore, O'Shaughnessy, and Grba's Mot. To Dismiss. ("Resp. to Other Individual Defendants"), at 11-12. Even if Lett had incorporated his qualified immunity section from his response to the Other Individual Defendants' Motion to Dismiss, it would not save his argument. In that response, Lett addresses defendants' qualified immunity claims regarding Counts III and IV in a mere three sentences that do not show any clearly-established rights. *Id.*

## CONCLUSION

For the forgoing reasons stated herein and those incorporated from the Individual Defendants' Reply (Dkt. 65), Fairley respectfully request that all counts in the SAC be dismissed with prejudice.

Dated: December 4, 2018          Respectfully submitted,

/s/ *Hayley L. Altabef*
Lisa M. Noller
Hayley L. Altabef
Foley & Lardner LLP
321 North Clark Street
Suite 2800
Chicago, IL 60654-5313
Tel: 312.832.4500
Fax: 312.832.4700
lnoller@foley.com
haltabef@foley.com


*Attorneys for Defendant Sharon Fairley*