UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KELVIN LETT,

    Plaintiff,

v.

THE CITY OF CHICAGO, *et al.*

    Defendants.

Case No. 18-cv-4993

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Kelvin Lett sues Defendants the City of Chicago (City), the Civilian Office of Police Accountability (COPA), the Independent Police Review Authority (IPRA), Sydney Roberts, Sharon Fairley, Annette Moore, Helen O'Shaughnessy, Mark Grba, AFSCME Local 654, and AFSCME Council 31, claiming that Defendants violated federal and state law in connection with Lett's employment as an IPRA investigator. Defendants move to dismiss Lett's second amended complaint. [44] [47] [49] [52]. For the reasons explained below, this Court dismisses with prejudice Lett's federal claims and declines to exercise supplemental jurisdiction over his state-law claims.

**I.    The Complaint's Allegations**[1]

    **A.    The Parties**

Lett worked as an Investigator II with IPRA, now known as COPA. [41] ¶ 5.

---

[1] This Court takes these facts from Lett's second amended complaint [41].

1

The City is a municipal corporation and is party to a collective bargaining agreement with AFSCME Local 654 that includes a grievance and arbitration clause culminating in final and binding arbitration. *Id.* ¶ 6. AFSCME Local 654 is a public-sector labor organization and the exclusive bargaining representative of City employees in the job title of Investigator II with COPA. *Id.* ¶ 14. Further, AFSCME Council 31 is the umbrella organization for various local labor organizations, including AFSCME Local 654. *Id.* ¶ 15.

COPA is an office of municipal government charged with, among other things, the investigation of alleged police misconduct. *Id.* ¶ 7. It is the successor organization to IPRA. *Id.* ¶¶ 7–8. Sharon Fairley is the former Chief Administrator of IPRA and COPA, Helen O'Shaughnessy is the former General Counsel of IPRA, Annette Moore is the former IPRA Chief of Staff, and Mark Grba is the former IPRA Deputy Chief. *Id.* ¶¶ 10–13.

### B. Lett's IPRA Work History

Lett alleges that when Fairley took over as Chief Administrator of IPRA at the end of 2015, she instituted an official policy, practice, and custom of requiring employees under her control to investigate and dispose of cases as quickly as possible, without regard for the quality, completeness, thoroughness, or accuracy of the investigation. *Id.* ¶¶ 23, 27. Specifically, Fairley told Lett and the rest of IPRA's staff that she wanted all the cases from prior IPRA administrations subject to re-review to be closed no later than June 30, 2016. *Id.* ¶ 24. Throughout all of 2016, Fairley held "clapping parties," during which all staff applauded each investigator who closed a

case during the prior week. *Id.* ¶ 25. Fairley also purchased free lunches for those employees that closed cases the prior week. *Id.* ¶ 26.

Lett additionally claims that the City, IPRA, COPA, and Fairley, by official practice and custom, and by express acts, instituted a system that encouraged and rewarded investigators for investigative findings against officers. *Id.* ¶ 28. Lett alleges that on numerous occasions, the City and IPRA—through Fairley's actions—pressured investigators to change their reports to include findings, conclusions, and outcomes that the investigators did not believe were supported by their investigations. *Id.* ¶ 30. As a result, multiple investigators refused to sign off on investigations and reports. *Id.* ¶ 31.

### C. Lett's Termination

Lett claims that, in June 2016, Fairley ordered him to alter his reports on a case involving a civilian shooting. *Id.* ¶ 32. More specifically, Lett alleges that Fairley told Lett to lie in his investigative report by stating that officers planted a gun on the victim. *Id.* ¶ 34. Lett protested and refused to do so, because he had no evidence to support that finding. *Id.*

Subsequently, Lett advised Grba that there was no evidence supporting Fairley's account. *Id.* ¶ 38. Grba and Lett then both approached Fairley; Grba advised Fairley that Lett had no evidence supporting the findings Fairley asked Lett to write and that Lett refused to follow through with Fairley's instruction. *Id.* ¶ 39. Fairley, however, responded that she "did not have time" to deal with Grba and Lett. *Id.* ¶ 40.

3

Following this incident, IPRA removed Lett from Grba's investigative team and pulled the case from him. *Id.* ¶ 41. Fairley also removed Lett from General Investigations and later ordered him transferred to the intake complaint section, and then to janitorial duties. *Id.* ¶ 42. Lett claims that Fairley transferred him in retaliation for Lett's refusal to lie in his investigative report. *Id.* ¶ 43.

Fairley also opened an internal investigation into Lett for allegedly disclosing confidential information and then she assigned O'Shaughnessy and Grba to conduct it. *Id.* ¶ 48. After the internal investigation, O'Shaughnessy and Grba ultimately recommended that Lett be found in violation of IPRA's confidentiality policy. *Id.* ¶ 49. Based upon their findings, Fairley ordered Lett fired in February 2017. *Id.* ¶ 51.

**D.     Lett's Grievance**

Lett initiated a grievance over his termination through AFSCME 654, which culminated in a grievance arbitration award dated July 2017. *Id.* ¶ 56. After a full evidentiary hearing, the arbitrator found that IPRA failed to conduct a full investigation, and therefore failed to satisfy its burden to terminate Lett. *Id.* ¶ 57. The arbitrator ordered that Lett be reinstated with back pay and his record be expunged of any reference to this discipline. *Id.* ¶ 58.

Lett claims that Fairley and Moore refused to comply with the arbitration award. *Id.* ¶ 60. They reinstated Lett effective August 2017, but placed him immediately on administrative leave with pay. *Id.* ¶ 60. Lett is now assigned to the FOIA office. *Id.* ¶ 63.

4

### E. The Second Amended Complaint's Causes of Action

Lett brings a seven-count second amended complaint [41]. Counts I and II allege First Amendment retaliation in violation of 42 U.S.C. § 1983 against the individual Defendants (Count I) and the City, IPRA, COPA, and Fairley (Count II). *Id.* ¶¶ 73–95. Count III alleges that all individual Defendants violated 42 U.S.C. § 1983 by depriving Lett of protected property without due process. *Id.* ¶¶ 96–106. Count IV alleges that all individual Defendants violated 42 U.S.C. § 1983 by depriving Plaintiff of his First Amendment right to freely associate. *Id.* ¶¶ 107–16.

Lett brings the remaining counts pursuant to Illinois law. Count V asserts that the City, COPA, IPRA, Roberts, Fairley, and Moore violated the Illinois Whistleblower Act by retaliating against Lett. *Id.* ¶¶ 117–23. Count VI seeks to confirm and enforce the arbitration award against the City, IPRA, COPA, and the AFSCME Defendants under the Illinois Uniform Arbitration Act. *Id.* ¶¶ 124–46. Finally, Lett brings an indemnification claim against the City in Count VII. *Id.* ¶¶ 147–48.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the plaintiff merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id.* This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## III. Analysis

Defendants raise several arguments supporting dismissal of Lett's second amended complaint. This Court addresses the federal-law claims first, then moves to the state-law claims.

### A. Counts I and II: First Amendment Retaliation Claims

In Count I, Lett asserts that the individual Defendants violated his First Amendment right to free speech by retaliating against him for refusing to alter his investigative report. [41] ¶¶ 73–82. Count II purports to state a *Monell* claim against the City, IPRA, COPA, and Fairley[2] based upon the individual Defendants' conduct in Count I. *Id.* ¶¶ 83–95.

To make out a First Amendment retaliation claim, Lett must plead and prove three elements: (1) he engaged in activity protected by the First Amendment; (2) he

---

[2] Lett sues Fairley only in her official capacity in Count II. [74] at 1.

6

suffered an adverse action that would likely deter future First Amendment activity; and (3) the First Amendment activity was "at least a motivating factor" in the Defendants' decision to retaliate. *Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

To show that his speech is protected under the First Amendment, a public employee must establish that: (1) he made the speech as a private citizen; (2) the speech addressed a matter of public concern; and (3) the state's interests as an employer "in promoting effective and efficient public service" does not outweigh the employee's interest in expressing that speech. *Davis v. City of Chicago*, 889 F.3d 842, 845 (7th Cir. 2018) (quoting *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013)). Here, the first issue is dispositive.

Whether an employee speaks as an employee or a citizen depends upon whether he made the speech pursuant to his official duties; that is, when he speaks pursuant to his official duties, he does not speak as a citizen for First Amendment purposes. *Id.*; *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006). The Seventh Circuit's recent decision in *Davis* controls this Court's determination of whether Lett spoke as a citizen. In *Davis*, the plaintiff, who worked for IPRA, brought a First Amendment retaliation claim against the City, alleging that his supervisor fired him because he refused to change his findings in connection with investigations into police misconduct. 889 F.3d at 844. The Seventh Circuit affirmed the district court's dismissal of the plaintiff's claim, finding that because IPRA required the plaintiff to draft and revise his reports as part of his job duties, his refusal to do so did not

7

constitute protected speech, but rather speech made pursuant to his official duties. *Id.* at 845–46.

Like the plaintiff in *Davis*, Lett, an IPRA investigator, alleges that his supervisor fired him because he refused to revise his findings in an investigative report. [41] ¶¶ 32–34, 51. Applying the *Davis* framework, this Court finds that Lett's refusal to alter his findings fails to constitute protected speech because he spoke only pursuant to his official duties. *See Davis*, 889 F.3d at 846. Those official duties, as the Seventh Circuit recognized, included revising reports at the direction of his superiors. *Id.* Accordingly, Lett fails to allege a constitutionally protected injury, foreclosing his First Amendment retaliation claim (Count I). This Court thus dismisses Count I.

Additionally, where a plaintiff brings a *Monell* claim against a municipality based upon the specific conduct of a municipality employee, the plaintiff cannot prevail on that *Monell* claim without first showing that the employee violated the plaintiff's constitutional rights. *Petty v. City of Chicago*, 754 F.3d 416, 424–25 (7th Cir. 2014). Because Lett fails to allege a First Amendment claim against the individual Defendants, he also fails to state a corollary *Monell* claim. This Court thus also dismisses Count II.

### B. Count III: Procedural Due Process Violation

In Count III, Lett claims that the individual Defendants violated his Fourteenth Amendment due process rights when they placed him on administrative

8

leave, rather than returning him to his investigative role, after the arbitrator's ruling. [41] ¶¶ 96–106.

A procedural due process claim requires that Lett plead and prove that: (1) he has a cognizable property interest; (2) Defendants deprived him of his property interest; and (3) Defendants did so without affording Lett due process. *Xiong v. Fischer*, 787 F.3d 389, 399 (7th Cir. 2015); *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014).

On the first two points, the individual Defendants argue that being placed on paid administrative leave does not amount to a deprivation of property. [47] at 8–9. And, generally, Defendants are correct that "a suspension with pay [does] not constitute the deprivation of a property right subject to federal constitutional protections." *Townsend v. Vallas*, 256 F.3d 661, 676 (7th Cir. 2001); *Keel v. Vill. of Harvey*, No. 10 C 6467, 2011 WL 249435, at *2 (N.D. Ill. Jan. 25, 2011). A plaintiff may nonetheless state a claim triggering due process protections if he alleges that paid administrative leave "imposes a substantial indirect economic effect." *Grady v. Bd. of Trustees of N. Illinois Univ.*, 78 F. Supp. 3d 768, 777 (N.D. Ill. 2015) (quoting *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010)); *Luellen v. City of E. Chicago*, 350 F.3d 604, 613 (7th Cir. 2003). Here, Lett alleges that by placing him on administrative leave, the individual Defendants deprived him of $9,000 per year plus losses in benefits. [41] ¶ 103. This allegation, which this Court takes as true for the purposes of a motion to dismiss, allows Lett to clear his first hurdle of pleading a deprivation of a property interest.

9

Lett's claim falls short, however, in alleging that the individual Defendants denied him adequate process. For purposes of determining whether Lett received inadequate process in connection with his administrative leave, the relevant constitutional question is "whether sufficient state-law protections exist, not whether sufficient protections were afforded." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). As such, to plausibly allege deprivation of due process, a plaintiff must either avail themselves of the "remedies guaranteed by state law or demonstrate that the available remedies are inadequate." *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996); *Cushing v. City of Chicago*, 3 F.3d 1156, 1164 (7th Cir. 1993) (noting that "the existence of a state remedy can play a role in determining whether an individual has stated a claim for a deprivation of due process."). Importantly, a public employee, like Lett, may avail himself of state-law remedies—such as seeking a writ of certiorari or mandamus—to redress his perceived injury. *See, e.g.*, *Parisi v. Vill. of Deerfield*, No. 08C527, 2008 WL 4865555, at *2 (N.D. Ill. July 9, 2008) (dismissing the plaintiff's claim because he failed to demonstrate the unavailability of state-law remedies to contest his placement on involuntary medical leave).

Here, Lett wholly fails to respond—in briefing or at oral argument—to the individual Defendants' argument that he fails to properly plead inadequate process. [47] at 9–10. This fact alone subjects Lett's claim to dismissal. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (reiterating the longstanding rule that "a

litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.").

Even more problematic, Lett's second amended complaint remains silent as to whether he ever attempted to seek relief for his alleged property deprivation by availing himself of state remedies, or why such state remedies would be inadequate. *See generally* [41]. This Court thus dismisses Count III of Lett's second amended complaint. *See, e.g.*, *Keel*, 2010 WL 310768, at *2 (dismissing due process claim because the plaintiff failed to allege that he exhausted state or administrative remedies, or that such remedies would be inadequate); *Cote v. Vill. of Broadview*, No. 08 C 6615, 2009 WL 2475117, at *7 (N.D. Ill. Aug. 11, 2009) (holding that "where adequate post-deprivation remedies exist in a state court to redress a property deprivation which resulted from a municipality's random and unauthorized deviation from established state policy and procedure," the plaintiff has received "all of the process that is due under the Constitution.").

### C. Count IV: First Amendment Free Association

In Count IV, Lett alleges that the individual Defendants unlawfully retaliated against him by placing him on administrative leave after he attempted to exercise his free association rights under the First Amendment by filing his grievance. [41] ¶¶ 107–16.

In the Seventh Circuit, a public employee is "protected from adverse employment consequences based on the exercise of the right to freedom of association only when the associational conduct relates to a matter of public concern." *Klug v.*

11

*Chicago Sch. Reform Bd. of Trustees*, 197 F.3d 853, 857 (7th Cir. 1999); *see also Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005) (a plaintiff "must first show that her associational activity relates to a matter of public concern"). Associational activity relates to a matter of public concern only where "the individual is 'associating to promote an idea' or his conduct was meant to call attention to an issue of public concern." *DeGroot v. Vill. of Matteson*, No. 13 C 8530, 2014 WL 5156703, at *3 (N.D. Ill. Oct. 14, 2014) (quoting *Klug*, 197 F.3d at 858). Purely personal grievances do not implicate public concern. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010).

Lett attempts to categorize his associational conduct—namely, filing his union grievance—as a matter of public concern by asserting that "one of the bases for his challenge was that the IPRA Chief Administrator . . . failed to properly oversee an investigation." [41] ¶ 114. Here, Lett fails to plausibly allege associational conduct. Even if speaking out about IPRA's shortcomings constitutes a matter of public interest, such an expression is not protected by the First Amendment if it addresses only the personal effect upon the employee or if the only point was to "further some purely private interest." *Gustafson v. Jones*, 290 F.3d 895, 908 (7th Cir. 2001) (internal quotation marks and citations omitted); *Marshall v. Porter County Plan Comm'n,* 32 F.3d 1215, 1219 (7th Cir. 1994) ("If the speech concerns a subject of public interest but the *expression* addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern."). Lett makes clear in his second amended complaint that he filed his grievance to redress a private injury: his

alleged wrongful termination. *See* [41] ¶¶ 56, 108. Accordingly, his associational conduct involved saving his job—a purely private interest, not a matter of public concern. This Court therefore dismisses Count IV.

### D. Counts V–VII: State-Law Claims

Generally, when a district court dismisses all of a plaintiff's federal-law claims, it should relinquish supplemental jurisdiction over state-law claims rather than resolve them on the merits. *Cortezano v. Salin Bank & Tr. Co.*, 680 F.3d 936, 941 (7th Cir. 2012); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994) (pendent state-law claims "should be left to the state courts."); 28 U.S.C. § 1367(c). As there are no remaining federal-law claims in this case, this Court declines to exercise supplemental jurisdiction over Counts V–VII, which Lett brings under Illinois law. *See Wright*, 29 F.3d at 1252; *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001) (noting that the district court's decision to relinquish supplemental jurisdiction is the norm). This Court thus dismisses Counts V–VII without prejudice.

## IV. Conclusion

This Court dismisses Lett's second amended complaint [41]. Lett's federal claims (Counts I–IV) are dismissed with prejudice because Lett has twice had the opportunity to amend his complaint without success. *See Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014). Further, because this Court declines to exercise supplemental jurisdiction over Lett's remaining claims (Counts V–VII), those claims are dismissed without prejudice.

In light of the foregoing, this Court grants the individual City Defendants' (Roberts, Moore, O'Shaughnessy, and Grba) motion to dismiss [47] as to Counts I, III, and IV, and denies as moot their motion as to Count V. This Court grants the City Defendants' (City, IPRA, and COPA) motion to dismiss [49] as to Count II, and denies as moot their motion as to Counts V, VI, and VII. This Court denies the AFSCME Defendants' motion to dismiss Count VI [44] as moot. Finally, this Court grants Fairley's motion to dismiss [52] as to Counts I–IV, and denies as moot her motion as to Count V.

All dates and deadlines are stricken. Civil case terminated.

Dated: March 14, 2019

Entered:

 John Robert Blakey
 United States District Judge